**In re Appeal of Jeff and Ann Miserocchi**

[749 A.2d 607]

No. 99-166

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed January 28, 2000

*Paul Gillies* of *Tarrant, Marks & Gillies,* Montpelier, for Appellants.

*John D. Hansen,* Rutland, for Appellee.

**Skoglund, J.** Applicants appeal from decisions of the environmental court that (1) denied on summary judgment their request for a variance, and (2) denied after trial approval for a change in use from agricultural to residential. We conclude that applicants do not need either change-of-use approval or a variance to change the use of their nonconforming structure from one permitted use to another permit-

ted use. Thus, we reverse the decisions of the environmental court to the extent that it held otherwise.

The environmental court made the following findings. In 1988, applicants acquired an eighteen-acre parcel in the Town of Clarendon with a barn that was formerly used to store agricultural equipment. The parcel is in a residential district of the town, in which both agricultural uses and one-family dwellings are permitted uses. The barn is forty feet wide and one hundred feet long, with the longer dimension running along the road. The barn is set back ten-to-twenty feet from the edge of the pavement. The town zoning regulations require, in a residential district, a minimum forty-foot setback from the edge of the road. Thus, the barn is nonconforming with the setback requirement.

Applicants claimed that the 1988 zoning administrator told them that they did not need a permit to alter the interior of the building for a residence, but that exterior renovations would require a permit. Applicants installed a water supply and sewage disposal system and installed a mobile home at the back of and partially inside the barn. In 1995, a subsequent zoning administrator told them that the residential use was a violation of the zoning regulations, and appellants applied for change-of-use approval. The zoning board of adjustment addressed the request as if it were a request for conditional-use approval. As the environmental court recognized, there is no zoning regulation that requires conditional-use approval to allow a change in use from one permitted use to another permitted use in a noncomplying structure. Nonetheless, the zoning board of adjustment granted a conditional-use permit to allow applicants to renovate part of the barn to use as a dwelling, by adding not more than two bedrooms and a bathroom, provided they did not change the shape of the building. The zoning board of adjustment also limited the use of the barn as a dwelling to ten years. Applicants did not appeal.

Subsequently, in 1996, applicants applied for (1) a change-of-use permit to remove the ten-year limitation on their residential use of the structure, and (2) for a variance to add skylights to the front and an addition to the rear of the building. The zoning board of adjustment denied both the change-of-use permit and the variance. On appeal, the environmental court ruled on summary judgment that applicants did not meet the criteria for a variance, but also ruled that "[i]n general, no variance should be necessary for a residence or an addition or accessory structure beyond the 40-foot setback." Because the applicants had not provided the court with sufficient information

as to the specific project proposed, the court ruled that the issue was not suitable for summary judgment.

Following a trial on the request for a change-of-use permit, the court reiterated that applicants need no permit for any of their plans for residential use behind the forty-foot setback because this is a permitted use in the residential zone. Although recognizing that the zoning board of adjustment erred in considering the change-of-use request as a request for conditional-use approval, the court also applied the conditional-use factors in 24 V.S.A. § 4407(2). The court denied the application for permanent residential use of the part of the barn within the forty-foot setback because it would increase the intensity of the use of the noncomplying part of the structure. The court found that, under 24 V.S.A. § 4407(2)(D) (adverse effect on bylaws), increased use would adversely affect § 280 (nonconforming uses) and § 430 (requiring the forty-foot setback) of the Clarendon zoning regulations. Applicants appeal.

██ ██ We will uphold the environmental court's construction of a zoning regulation unless the construction is clearly erroneous, arbitrary or capricious. See *In re Weeks*, 167 Vt. 551, 554, 712 A.2d 907, 909 (1998). Here, we conclude that the court's construction is clearly erroneous. To begin with, the court erred by considering the factors in 24 V.S.A. § 4407(2) in deciding whether to grant change-of-use approval. Section 4407(2) pertains to permitting for conditional uses. This section is not applicable because applicants want to use the barn as a residence. Residential use — one-family dwelling — is a permitted use in the residential district, not a conditional use. See Town of Clarendon Zoning Regulations § 430. Thus, applicants do not need a conditional-use permit to use the barn as a residence.

This case therefore involves a nonconforming use, rather than a conditional use. Nonconforming uses are governed by 24 V.S.A. § 4408. Section 4408(a)(1) defines a "nonconforming use" as "a use of land *or a structure* [that] does not comply with all zoning regulations" but that was in compliance prior to enactment of the regulations. (Emphasis added.) Section 4408(a)(2) defines a "noncomplying structure" to be a structure or part thereof that does not comply with the zoning regulations but was in compliance before the enactment of the regulations. Therefore, the barn in this case is a noncomplying structure because the structure is in the setback area. It is also a nonconforming use, however, because the structure does not comply with all zoning regulations, specifically the setback requirements. Indeed, all noncomplying structures will also be nonconforming uses

under the statute. See *In re Stowe Club Highlands*, 164 Vt. 272, 279 n.5, 668 A.2d 1271, 1276 n.5 (1995); see also *In re Letourneau*, 168 Vt. 539, 546, 726 A.2d 31, 37 (1998) (§ 4408(a)(1) defines noncomplying structure as nonconforming use).

■ Section 4408(b) authorizes municipalities to "regulate and prohibit expansion and undue perpetuation of nonconforming uses," which includes noncomplying structures. It specifies four actions that the municipalities may control: (1) changes of nonconforming uses to other nonconforming uses, (2) extension or enlargement of nonconforming uses, (3) resumption of nonconforming uses after abandonment or discontinuance, and (4) movement or enlargement of a structure containing a nonconforming use. The statute authorizes municipalities to regulate these changes in nonconforming uses but does not command any particular action. See *Stowe Club Highlands*, 164 Vt. at 278, 668 A.2d at 1276. Thus, we turn to the municipal zoning regulation to determine how the municipality regulates nonconforming uses. See *id.*

Section 4408 is implemented by Town of Clarendon Zoning Regulations § 280, which provides:

> Any non-conforming use of structures or land except those specified below may be continued indefinitely, but:
>
> 1. Shall not be moved, enlarged, altered, extended, reconstructed or restored (except as provided below).
> 2. Shall not be changed to another non-conforming use without approval by the Board of Adjustment.
> 3. Shall not be re-established or restored without approval by the Board of Adjustment if such use has been discontinued for a period of six months, or has been changed to, or replaced by a conforming use.

Zoning regulations are construed under general rules of statutory construction. See *Weeks*, 167 Vt. at 554, 712 A.2d at 909. Thus, we are bound by the plain and ordinary meaning of the language, unless it is uncertain. See *id.* Because land use regulation is in derogation of the common law, any ambiguity is resolved in favor of the landowner. See *id.* at 555, 712 A.2d at 910.

The plain and ordinary meaning of § 280 allows any nonconforming use of structures or land to be continued indefinitely; however, the nonconforming use "[s]hall not be moved, enlarged, altered, extended, reconstructed or restored." Section 280 provides two excep-

tions to the general rule: (1) a nonconforming use may be changed to another nonconforming use with approval, and (2) a nonconforming use may be re-established or restored after discontinued with approval. Thus, to obtain approval for a change to a nonconforming use, a proposal must be covered by one of these exceptions. Neither exception in § 280 is applicable here because applicants do not seek to (1) change from one nonconforming use to another nonconforming use, or (2) restore a discontinued, nonconforming use. Because applicants' proposal does not fall within either exception, § 280 provides no procedure for applicants to obtain approval. Applicants' proposed change in use is either unregulated by § 280 or prohibited by § 280.

There are two problems with the framework of § 280. First, § 280 fails to provide any criteria for the two exceptions under which the board of adjustment may evaluate whether to approve a change in nonconforming use. Absent any criteria or guidelines, "the applicant for a permit is left uncertain as to what factors are to be considered." *Town of Westford v. Kilburn*, 131 Vt. 120, 124, 300 A.2d 523, 526 (1973). Moreover, a decision arrived at without reference to any standards or principles is arbitrary and capricious, see *id.*; such ad hoc decision-making denies the applicant due process of law. See *Lewandoski v. Vermont State Colleges*, 142 Vt. 446, 453-54, 457 A.2d 1384, 1388 (1983) (United States Supreme Court defines arbitrary decision as one reached without consideration or reference to principles); *State v. Buelow*, 155 Vt. 537, 547, 587 A.2d 948, 954 (1990) (Dooley, J., concurring) (ad hoc decision-making denies due process of law). The lack of guiding standards in § 280 may explain in part why both the zoning board and the environmental court turned to the guidelines for conditional-use approval to provide some principled basis for their decisions. Section 280 provides no such guidelines as a basis for denying approval, however.

Second, § 280 appears to prohibit all alterations of nonconforming uses, no matter how minor, but allows the board of adjustment to grant approval routinely for major changes, that is changes from one nonconforming use to another nonconforming use, and restoring a discontinued, nonconforming use. Indeed, under the plain language of § 280, a nonconforming use cannot be altered at all unless it is changed to another nonconforming use or discontinued and then restored. This construction is simply not rational. See *Stowe Club Highlands*, 164 Vt. at 280, 668 A.2d at 1277 (rejecting as irrational construction of zoning regulation that reconstruction or replacement

of nonconforming structure is allowed while enlargement or substantial alteration is prohibited).

To avoid this irrational result, and the alternative, a standardless approval procedure, we construe § 280 narrowly to address only a change to the nonconforming use. Applicants here do not propose to change their nonconforming use, the setback. They plan to change only from one permitted use to another permitted use, a change that is not regulated by § 280. Thus, under § 280, applicants may continue the nonconforming use of the land — the setback — indefinitely, provided they do not move, enlarge, alter, extend, reconstruct or restore the nonconforming use — again, the setback. Accordingly, we hold that applicants do not need approval to proceed with their plans because they do not propose any change to the nonconforming use; they propose only to change the use of the barn from agricultural to residential. This construction also resolves any ambiguity in § 280 in favor of the landowner.

Our holding is consistent with the majority of decisions in other jurisdictions. Although it is difficult to analogize to other cases because zoning regulations differ widely, courts have generally allowed a change from one permitted use to another permitted use within a noncomplying structure. See, e.g., *Petruzzi v. Zoning Bd. of Appeals*, 408 A.2d 243, 246-47 (Conn. 1979) (board must issue permit to plaintiffs seeking to alter interior of existing noncomplying building from one permitted use — church — to another permitted use — single family dwelling); *Singh Sukthankar v. Hearing Bd. of Radnor Township*, 280 A.2d 467, 470 (Pa. Commw. Ct. 1971) (ordinance does not restrict change from one conforming use — carriage house — to another conforming use — dwelling house — in building nonconforming only as to setback); see also *Goldhirsh v. McNear*, 590 N.E.2d 709, 712 (Mass. App. Ct. 1992) (remanding for board to determine whether change from one permitted use — carriage house — to another permitted use — single-family dwelling — will increase nonconformity); *Spring Garden Civic Ass'n v. Zoning Bd. of Adjustment*, 617 A.2d 61, 64 (Pa. Commw. Ct. 1992) (existing nonconforming structure may be put to any permitted use so long as altered use does not increase nonconformity of structure).

Even where the zoning regulation specifically requires a permit for a noncomplying structure to change from one permitted use to another permitted use, courts have viewed favorably changes that do not increase the nonconformity. See, e.g., *Nichols v. Board of Zoning Appeal of Cambridge*, 530 N.E.2d 1257, 1260 (Mass. App. Ct. 1988)

(permit required for structural alterations to noncomplying structure to change from one permitted use — garage — to another permitted use — office; however, board should consider that following factors favor grant of permit: change of use involves no change in footprint of building, no increase in nonconformity and improves appearance of garage).

We also conclude that the environmental court erred in denying change-of-use approval solely on the grounds that the change in use from agricultural to residential would increase the intensity of the use of the noncomplying part of the structure. Section 280 does not specifically address an increase in intensity of use of a nonconforming use. Decisions addressing an increase in intensity of use ordinarily involve nonconforming business activities. In such cases, most courts have held that a mere increase in the volume or intensity of a nonconforming business activity is not prohibited by a zoning regulation prohibiting an extension or enlargement of a nonconforming use. See 1 K. Young, Anderson's American Law of Zoning §§ 6.38, 6.50 (4th ed. 1996); see, e.g., *DiBlasi v. Zoning Bd. of Appeals*, 624 A.2d 372, 376 (Conn. 1993) (mere increase in amount of business is not illegal expansion of original nonconforming use).

Although there are few cases addressing an increase in intensity of use of a noncomplying structure, generally a mere increase in the intensity of use of a noncomplying structure is not prohibited. See, e.g., *Seaside Properties v. Zoning Bd. of Appeals*, 542 A.2d 746, 747 (Conn. App. Ct. 1988) (regulations do not prohibit change in use of summer cottage, with nonconforming lot size and setback, to year-round use); *Cirullo v. Old Lyme Zoning Bd. of Appeals*, No. 533659, 1996 WL 694626 at *6 (Conn. Super. Ct. Nov. 22, 1996) (intensification of use of nonconforming residential structure is not prohibited expansion of nonconforming use). We recognize that a goal of zoning is to phase out nonconforming uses, see *Weeks*, 167 Vt. at 555, 712 A.2d at 910, but absent a regulation specifically prohibiting an increase in the intensity of use of a noncomplying structure, we decline to create a rule contrary to the majority of law on this issue.

Finally, we conclude that the ruling of the environmental court — restricting residential use to the part of the barn behind the forty-foot setback — is clearly erroneous. Nothing in 24 V.S.A. § 4408 or zoning regulation § 280 directs such a result. Allowing applicants to use only part of the barn is impractical. Not surprisingly, no case has been presented to us that limits a permitted activity to the complying part of a noncomplying structure.

Much of the difficulty in this case arises from the merger of the concepts of nonconforming activities and noncomplying structures under the single denotation "nonconforming use." In general, zoning law distinguishes between the two concepts. "Use" restrictions limit the activities that may take place within a certain area, while "bulk" restrictions control setbacks and size, shape and placement of buildings on the property. See 7 P. Rohan, Zoning and Land Use Controls § 42.01[4], at 42-9 (1991). Thus, zoning regulations usually provide different restrictions for nonconforming activities and noncomplying structures. See *Stowe Club Highlands*, 164 Vt. at 278, 668 A.2d at 1276 (definitions in Stowe zoning ordinance carefully differentiate nonconforming use and nonconforming structure). This distinction is helpful because rules applying to nonconforming activities often cannot be easily applied to noncomplying structures and vice versa.

Zoning regulation § 280 does not distinguish between the two concepts, and therefore, it is difficult to apply in this case because its directives more aptly apply to nonconforming activities than to noncomplying structures. Restrictions that specifically address noncomplying structures are preferable because they provide clearer guidance to landowners, zoning boards and courts. There are three common types of restrictions on alterations to noncomplying structures. First, some limitations may be very restrictive, confining alterations to those related to safety regulations. K. Young, *supra*, § 6.56, at 658. Second, the most common type of limitation prescribes the maximum amount of money, often as a percentage of the value of the building, that may be spent to alter a noncomplying building. See *id.* at 659. Finally, some regulations limit alterations of noncomplying structures to those that do not increase the nonconformity. See, e.g., *Letourneau*, 168 Vt. at 546-47, 726 A.2d at 37 (Derby ordinance provides that any nonconforming structure shall not be moved, enlarged, altered or extended in any manner that would make nonconforming structure more nonconforming); *Spring Garden*, 617 A.2d at 64 (existing nonconforming structure may be put to any permitted use that does not increase nonconformity of structure); *Goldhirsh*, 590 N.E.2d at 711 (question is whether proposed changes to nonconforming residential structure will increase nonconforming nature). Our decision here is consistent with the third and least restrictive of these options.

In sum, the nonconforming use, the setback of the barn, may be continued indefinitely. See Town of Clarendon Zoning Regulations § 280. Only a change in the nonconforming use, in this case the

setback, requires approval. See *id*. None of the changes applicants want to make involve a change in the setback. Thus, they need no change-in-use approval, no conditional-use permit and no variance.

*Reversed.*