## TOWN OF GROTON v. AGENCY OF NATURAL RESOURCES

[772 A.2d 1103]

No. 00-428

April 19, 2001. The Town of Groton appeals from the Caledonia Superior Court's review of the water resources board's decision to deny the Town's application for a stream alteration permit it requested in order to repair and replace a dam located on the Wells River within the Town. The court upheld the board's decision to deny the permit. The Town claims that it was error to affirm the board's decision because the board erred in (1) refusing to admit evidence presented by the Town regarding its use of the water in the dam impoundment area for fire safety, and (2) in using the condition of the river after the dam was washed out in 1998 as the baseline in its determination that granting the permit would result in a change in the watercourse that would "significantly damage fish life."* 10 V.S.A. § 1023(a)(2). We affirm.

The dam in question was first erected in 1803 and has been repaired or replaced twice since. In July 1996, the Town filed an incomplete stream alteration permit with the Agency of Natural Resources to repair the dam. See 10 V.S.A. § 1022. In August of that year, the ANR requested that the Town supplement its application to provide necessary information, but the Town was unable to do so until February 1998 because the Town's representative handling the project had medical problems. In the meantime, however, in January 1998, the dam was destroyed by ice and high water. Once the dam was destroyed, the fish habitat in the river improved, and species of trout and sculpin again began to inhabit this portion of the Wells River. This stretch of the river is now one of the Wells River's few high quality habitats for sculpin, trout, and salmon.

---

* In its reply brief, the Town argued that the board decision did not properly protect its riparian rights. During oral argument it conceded, however, that its riparian rights, whatever they may be, are not relevant to the decision under the statute, 10 V.S.A. § 1023(a)(3). The statute requires the board to find that the *granting* of a permit will not significantly damage riparian rights. The Town argues that the *denial* of the permit damages its riparian rights. Because the argument was not raised below and is not consistent with the statute, we decline to consider it further.

Because the river system reverted to its natural state, and 10 V.S.A. § 1023 requires that any permit be denied if the "proposed change" in the watercourse would "significantly damage fish life," the ANR denied the permit. The Town appealed to the board under 10 V.S.A. § 1024(a), and the board reviewed the permit application de novo, as required. The board found that issuing the permit would "significantly damage fish life," *id.* § 1023(a)(2), and thus determined that, under the factors set out in 10 V.S.A. § 1023, it had to deny the permit. The Town subsequently appealed to the superior court under 10 V.S.A. § 1024(b), and the court affirmed the board's decision, ruling that there was no error in excluding the fire safety evidence or in using the post-washout river conditions as the baseline in its analysis. The Town appeals and renews its previous arguments, but otherwise does not challenge the findings of the board.

Our review of a board decision that is on appeal here after review in the superior court is the same as that of the superior court: whether the board acted arbitrarily, unreasonably, or contrary to law. *In re Town of Sherburne*, 154 Vt. 596, 604, 581 A.2d 274, 278-79 (1990). We look to see whether the decision makes sense to a "reasonable person," *id.* at 605, 581 A.2d at 279, and the board has wide discretion in making its findings and conclusions as long as they are not inconsistent with legislative and agency policy, see *id.*; accord *In re Wal*Mart Stores, Inc.*, 167 Vt. 75, 79, 702 A.2d 397, 400 (1997).

At the hearing before the board, the Town offered evidence that the water contained in the impoundment area prior to the dam's destruction was used for Town fire safety, and that it would continue to use the water in this manner once the dam was rebuilt. The Town urges us to accept its argument that the board erred in not admitting this evidence because it had a duty to consider,

as a factor, those things that relate to the general public interest and welfare in deciding whether or not to grant the permit. We see no error in the board's refusal to consider this evidence because the plain language of 10 V.S.A. § 1023 sets out specific factors, and if any one of them is not met, the permit is to be denied. See *In re Handy*, 171 Vt. 336, 341, 764 A.2d 1226, 1232-33 (2000) (where a statute is unambiguous, we rely on the plain and ordinary meaning of the words chosen to determine legislative intent); *Merkel v. Nationwide Ins. Co.*, 166 Vt. 311, 314, 693 A.2d 706, 707 (1997) (principal objective of statutory construction is to discern the legislative intent). Indeed, we do not see how the board could consider evidence outside of the clearly delineated factors of § 1023. See 10 V.S.A. § 905 ("board shall take such actions as they are authorized by statutes in the management of the water resources of the state"); *Vincent v. Vermont State Retirement Bd.*, 148 Vt. 531, 535, 536 A.2d 925, 928 (1987) ("'agency must operate for the purposes and within the bounds authorized by its enabling legislation'") (quoting *In re Agency of Administration, State Buildings Division*, 141 Vt. 68, 75, 444 A.2d 1349, 1352 (1982)).

The Town next argues that it was error for the board to use the condition of the river after the dam had washed out as its baseline for comparison. At the hearing, the ANR urged the board to use the river's actual present state as the baseline, and the Town urged the board to use the historical conditions of the river when the dam was in place. This distinction is important because, under the statute, it is the "proposed change" to the watercourse that has to be analyzed. 10 V.S.A. § 1023(a). The argument between ANR and the Town boils down to a dispute over whether to compare the proposed conditions to (a) the conditions present with the old dam in place (the Town's position); or (b) the current

conditions with no dam (the ANR position). The extent of the proposed change will vary widely depending upon the approach adopted. Specifically, if the baseline is the river as it exists in its natural state without the dam, then permitting the dam to go forward will "significantly damage fish life," *id.* § 1023(a)(2), because the fish have recovered since the dam's washout in January 1998, and the placement of the dam will destroy this recovered habitat.

The Town argues that the board's prior dam restoration decisions support the Town's position because, in these prior decisions, the board used as a baseline the river condition as it was with the dam in place. See, e.g., *In re Passumpsic Hydroelectric Project*, No. WQ 94-09, Memorandum of Decision (Vt. Water Res. Bd. Aug. 15, 1995); *In re Lamoille River Hydroelectric Project*, Nos. WQ 94-03, WQ 94-05, Memorandum of Decision (Vt. Water Res. Bd. Aug. 15, 1995). In these cases, however, the dams were in existence, and there was no evidence to show the pre-dam state of the stream. Here, on the other hand, the dam was gone and the stream was in its natural state when the Town completed its application to ANR and when it filed its de novo appeal with the board. The Town in this case was unable to clearly show the condition of the river as to fish habitat when the dam was in place. Thus the board, consistent with these prior decisions, refused to engage in speculation and looked to the stream's actual condition in establishing a baseline by which to measure the effects of the proposed change in the watercourse.

We reiterate that we are acting under a limited standard of review. The board's approach was fully consistent with its earlier decisions. It was not arbitrary, unreasonable or contrary to law.

*Affirmed.*