2004 VT 6

**In re Appeal of BENNINGTON SCHOOL, INC.**

[845 A.2d 332]

No. 02-367

¶ 1. January 15, 2004. Bennington School, Inc. appeals an environmental court decision in favor of the Town of Bennington finding that BSI's proposed use of a single-family home as a residence for students required a conditional use permit. Despite finding that BSI's proposed residential use met the statutory requirements of a permitted group home under 24 V.S.A. § 4409(d), the environmental court ruled that it was the functional equivalent of a boarding school or college dorm and thus was properly subject to the conditional use process. Because we find BSI's use of the residence under the first of two proposed scenarios operates as a permitted group home, we reverse. We decline to rule on

the second proposed scenario, however, as doing so would require us to render an impermissible advisory opinion.

¶ 2. This case was presented to the environmental court on stipulated facts which can be summarized as follows. BSI is a state-licensed, residential-care facility for adolescent children with special educational needs, including learning disabilities, moderate intellectual and physical handicaps, and emotional and social disorders. The parties stipulated that all of BSI's students are developmentally disabled. As part of its mission, the school provides educational, mental health, and living skills services to all of its students.

¶ 3. BSI students reside on one of the two main campuses or in one of the school's small residences. The residences are designed to provide eligible students with a healthy, family-style living experience in which they can learn day-to-day living skills and develop bonds with small groups of students and staff before returning to their homes and communities. No more than six students live in these residences, which are staffed by two or three BSI employees during the day when the children are in the homes, and at least one awake staff member throughout the night.

¶ 4. The residences are located in the Bennington community on land zoned as Rural Residential or Village Residential under the Town's bylaws. There are no other residential-care facilities within 1,000 feet of any of BSI's residences.

¶ 5. Some of the typical homeowner functions at the residences are performed by BSI staff such as maintaining the property and grounds around the residences. Although the residences have functioning kitchens, most of the meals are prepared on the main campus and delivered to the residences by van each day.

¶ 6. This dispute initially arose when BSI tried to purchase a single-family home to use as an additional residence.

In connection with the transaction, BSI applied to Bennington's Zoning Board of Adjustment for a permit. Relying on 24 V.S.A. § 4409(d), which prohibits municipalities from excluding certain residential facilities and group homes from residential areas, BSI argued that it was entitled to a single-family residence permit. The ZBA disagreed, concluding that BSI's proposed residence was not a permitted group home and therefore required a conditional use permit. BSI appealed to the environmental court.[1]

¶ 7. During the pendency of the appeal before the environmental court, the owner of the single-family residence at issue sold his home to another buyer. The environmental court agreed to hear the appeal, however, once it determined that the case was not moot because, under the standard established in *Doria v. Univ. of Vt.*, 156 Vt. 114, 118, 589 A.2d 317, 319 (1991), the question was capable of repetition, yet evading review. This issue was not appealed to this Court. We accept the environmental court's conclusion and find the case is not moot on the facts presented.

¶ 8. On cross-motions for summary judgment, BSI proposed opening two different types of residences and asked the environmental court to evaluate whether they would be considered permitted single-family residences under 24 V.S.A. § 4409(d) or subject to conditional use review. The first scenario depicts current operations at BSI's existing residences. There, students leave the residences in a van to go to school on the main campus each weekday. While on campus, they attend classes and group and individual counseling sessions. The

---

[1] The ZBA made its determination based on the Bennington Zoning Bylaws. Because § 4.1 of the Bennington Zoning Bylaws adopts 24 V.S.A. § 4409(d) verbatim, we focus our discussion on the statute rather than the specific bylaw.

children have lunch at school and participate in after-school recreation and extra-curricular activities on campus or in the community. Each evening, students return to their residences for dinner, homework, chores, and social time. Students do not attend class on campus on weekends, but maintain similar schedules with respect to extra-curricular activities. Besides evening homework and the occasional tutoring from BSI staff, however, no educational instruction is provided in the residences. Nor does BSI staff provide routine clinical counseling in the residences except in the infrequent event a staff member needs to meet with a child or with the residents in a group to address specific issues.

¶ 9. The second scenario describes BSI's proposed alternative use of its residences. In this hypothetical situation, BSI students would go to class and attend counseling sessions in rooms within the residences. Teachers and clinicians would come to the house each day to provide these services, eliminating the need for any additional adult supervision during the day. The students would still go to the campus to participate in recreational and extra-curricular activities, but they would receive all of their educational instruction and counseling within the residences.

¶ 10. Given the parties' stipulations, the environmental court began its analysis by "assuming that the [group homes] meet the statutory exemption for consideration as a permitted single-family residence." The court then looked beyond 24 V.S.A. § 4409(d) to determine "whether anything else about the operation of the residence in connection with the school requires it to be treated as a school use rather than a permitted single-family use." After reviewing the characteristics of each option, the court determined that under both proposed scenarios the operation of the residences was so closely involved with the school that they were the functional equivalent of boarding school

or college dormitories and thus subject to conditional use approval. The court illustrated its point by comparing BSI's proposed uses of the residences to dance classes or an auto repair shop that, although operated out of a traditional single-family residence, nevertheless require conditional use approval. The court then concluded that "[t]he statutory protection for group homes for the developmentally or physically disabled entitles such homes to be treated the same as a single-family residence, not to receive more protection than a single-family residence would receive under the same circumstances."

¶ 11. The environmental court's findings of fact will be upheld if based on relevant, admissible evidence that a reasonable person would consider as supporting the conclusion. *In re Wal*Mart Stores*, 167 Vt. 75, 80, 702 A.2d 397, 401 (1997). We will uphold its interpretation of a zoning regulation if it is rationally derived from a correct interpretation of the law and not clearly erroneous, arbitrary, or capricious. *Id.*; *In re Miserocchi*, 170 Vt. 320, 323, 749 A.2d 607, 610 (2000).

¶ 12. Zoning ordinances are interpreted using the rules of statutory construction. *Miserocchi*, 170 Vt. at 324, 749 A.2d at 611. When construing statutes, our primary goal is to give effect to the Legislature's intent. *Herrick v. Town of Marlboro*, 173 Vt. 170, 173, 789 A.2d 915, 917 (2001). The definitive source of legislative intent is the statutory language, by which we are bound unless it is uncertain or unclear. *Miserocchi*, 170 Vt. at 324, 749 A.2d at 611. "Because land use regulation is in derogation of the common law, any ambiguity is resolved in favor of the landowner." *Id.*

¶ 13. We look first to the plain language of the statute for guidance. The Court will assume the common and ordinary usage of language in a statute unless doing so would render it ineffective, meaningless, or lead to an irrational

result. *Town of Killington v. State*, 172 Vt. 182, 188-89, 776 A.2d 395, 400-01 (2001). Under 24 V.S.A. § 4409(d):

> A state licensed or registered residential care home or group home, serving not more than six persons who are developmentally disabled or physically handicapped, shall be considered by right to constitute a permitted single-family residential use of property, except that no such home shall be so considered if it locates within 1,000 feet of another such home.

24 V.S.A. § 4409(d). According to the plain language of the statute, therefore, any (1) licensed group home (2) located more than 1,000 feet from any other group home, which (3) serves no more than six people (4) with developmental or physical disabilities, "shall be considered by right" a permitted single-family residence for zoning purposes.

¶ 14. As the environmental court correctly concluded, the parties' uncontested, stipulated facts submitted in support of the cross-motions for summary judgment verify that the proposed residence described in scenario one — where all classes and counseling occur on the main campus — satisfies the statutory factors of 24 V.S.A. § 4409(d). Paragraphs five and six of the stipulated facts make clear that "BSI is licensed by the Vermont Department of Education to provide special education services ... [and] the Vermont Department of Social & Rehabilitative Services to provide residential care to children." The parties also agreed that BSI's students have been diagnosed as having a developmental disability,[2] that no more than six stu-

dents live in the residences, and that no other residential-care facility is located within 1,000 feet of the BSI's homes. Because it meets the statutory requirements of § 4409(d), it was clear error for the environmental court to subject BSI's group home as presented in the first proposal to the conditional use process rather than treat it as a permitted single-family residence.

¶ 15. This outcome is supported not only by the facts, but also by the plain language of the statute and the legislative policy undergirding it. Assuming the common and ordinary use of the statutory language as we must, it is evident that once a proposed land use meets the statutory criteria, it must be considered by right as a permitted single-family residential use. The statutory factors are our primary indication of legislative intent regarding what elements are necessary to constitute a permitted use under § 4409(d), and once BSI demonstrated its eligibility as a group home, the environmental court was not permitted to look outside these factors for reasons to deny BSI this statutory protection. See *Town of Groton v. Agency of Natural Res.*, 172 Vt. 578, 579, 772 A.2d 1103, 1105-06 (2001) (mem.) (holding that the water resources board could not consider evidence outside clearly stated statutory factors when determining whether to grant land-use permit).

¶ 16. The Declaration of Policy accompanying the Legislature's 1978 amendment to § 4409(d) further reinforces this conclusion. There, the Legislature stated that "[i]t is the policy of the state of Vermont that developmentally disabled and physically handicapped persons should not be excluded by municipal zoning ordinances from the benefits of normal

---

[2] The parties did not appeal the question of how to define the term "developmentally disabled" in this context, nor did they present oral argument on the issue

before this Court. As a result, we make no ruling as to the proper definition of the term "developmentally disabled" and accept the parties' stipulation on this point as the law of this case.

residential surroundings." 1977, No. 140 (Adj. Sess.), § 1. By specifically exempting group homes for the developmentally and physically disabled from the conditional use process, the Legislature explicitly prohibited the use of municipal ordinances to exclude such group homes from residential areas. If we permit zoning boards and the environmental court to rely on evidence beyond the specific statutory requirements to subject qualifying uses to conditional use review, we will have rendered the statute and the Legislature's intent meaningless.

¶ 17. The Town argues that prohibiting the environmental court from considering facts outside the statutory factors is equivalent to asking the court to apply evidentiary blinders. To the contrary, parties seeking a permit under § 4409(d) must still provide sufficient evidence on each element to obtain statutory protection. Disputes on such facts give the environmental court ample opportunity to consider all evidence relevant to the application of the statutory factors. Allowing the court to go beyond this, however, risks subjecting these exempted populations to the very scrutiny the Legislature sought to prevent by enacting § 4409(d).

¶ 18. We now turn our attention to the second proposed scenario in which BSI students would receive their educational instruction and counseling services entirely within the residence. Unlike the first scenario, BSI does not currently have a residence operating under these conditions nor was this issue raised before the ZBA. This purely hypothetical question was not presented to the environmental court until the second set of cross-motions for summary judgment.

¶ 19. Our jurisdiction is limited to issuing opinions determining actual controversies existing between parties. *In re Constitutionality of House Bill 88*, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949) ("The judicial power, as conferred by the Constitution of this State upon this Court, is . . . the right to determine actual controversies arising between adverse litigants . . . ."). "The existence of an actual controversy turns on whether the plaintiff is suffering the threat of actual injury to a protected legal interest, or is merely speculating about the impact of some generalized grievance." *Parker v. Town of Milton*, 169 Vt. 74, 77, 726 A.2d 477, 480 (1998) (internal citations omitted). Without an actual controversy, any judicial ruling would be merely an advisory opinion which is beyond our vested authority under the Vermont State Constitution. *J.L. v. Miller*, 174 Vt. 288, 293, 817 A.2d 1, 4 (2002). The parties failed to articulate an actual controversy with respect to BSI's hypothetical second scenario. We decline therefore to speculate on the application of § 4409(d) to this fictional residence or on whether it should be subjected to conditional use approval as a school. Such purely advisory opinions are outside our jurisdictional power.

*Reversed and remanded for further proceedings consistent with this opinion.*