STATE OF VERMONT

ENVIRONMENTAL COURT

```
                                    }
Appeal of Barnes                    }          Docket No. 154-8-04
                               Vtec
                                    }
                                    }
```

<u>Decision and Order on Cross-Motions for Summary Judgment</u>

Appellants Gary and Maureen Barnes appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of South Hero that a variance was not needed for the project proposed by Appellee-Applicants Diana Peach and Randolph Lee. Appellant Gary H. Barnes, Esq. represents himself and Maureen Barnes; Appellee-Applicants are represented by Douglas R. Marden, Esq.; the Town is represented by Paul S. Gillies, Esq. All three parties have moved for summary judgment on Questions 1, 3, 4, and 5 of the Statement of Questions, addressing' whether a zoning permit is required to restore a non-complying structure destroyed by fire and whether a variance is needed to build the replacement structure in the same location as the original structure but twenty

inches higher than the original structure. The following facts are undisputed unless otherwise noted.

Appellee-Applicants own a 1.3-acre parcel of land (the camp property) at 303 West Shore Road on Lake Champlain, in the Shoreland zoning district. The lot was created in or before 1968. Appellee-Applicants also own the adjacent 5.09-acre lot to the north, on which they have built their primary residence. Near the lake the camp property measures approximately 125 feet wide (north to south) and 188 feet deep (east to west), but the property includes a 50-foot-wide strip of land extending 532 feet to the east. The camp property has access from West Shore Road over a 197-foot-long right-of-way across another property, continuing as a driveway down the fifty-foot-wide strip towards the camp building and the lake.

As of May of 2004, the property was improved with a camp building, an outhouse, and another small building. Appellee-Applicant Diana Peach's parents had constructed the original 10' x '16' camp and the outhouse in 1969, before the Town of South Hero adopted interim zoning regulations in 1972. The property has been in use as a seasonal camp since its construction. A camp is a permitted use in the Shoreland zoning district. Zoning Bylaw Regulations (Bylaws) Table 202-4.

Appellee-Applicants acquired the camp property in 1995. The original camp building was 15' 10" in height, and was located 43 feet horizontally from the mean lake level (95.5 feet elevation), 20 feet from the northerly lot line, 86 feet from the southerly lot line, and approximately 700 feet from the easterly lot line (at the end of the 50-foot-wide strip) or approximately 900 feet from the edge of West Shore Road. The camp building was therefore a non-complying structure as to the 75-foot required lake setback and the 25-foot required north side setback. Bylaws Table 202-4.

The parties do not dispute that the camp parcel lacks running water, that the water supply for the camp building is taken from the lake, and that the camp building has been served by an outhouse which has been moved from place to place on the parcel over the years. The camp building includes a kitchen and includes sleeping facilities for five persons downstairs, and for three additional persons in a loft.

At least as of 2004, Appellee-Applicants had placed another small structure on the property, shown as a storage shed on the site sketch. This building has windows and a door, but has no permanent foundation. From the materials provided by the parties, we cannot determine whether it is easily moveable, or whether it is smaller than 100 square feet in area and 10 feet in height. It is located on the property at least 5 feet from all the property lines and 35 feet from the edge of the right-of-way for West Shore Road. Question 11 of the Statement of Questions raised the issue of whether this structure

required a permit.  However, although at a pretrial conference the parties discussed including this issue in their motions for summary judgment, they did not in the end do so.[1]

Appellee-Applicants'' camp building and the outhouse (and some surrounding trees) were destroyed in a fire in May of 2004.  Shortly thereafter, Appellee-Applicants commenced construction of a replacement camp building, which they assert is identical to the old camp building in terms of footprint[2], interior facilities and layout.  The new camp building is twenty inches higher than the previous one, two inches of which is due to the use of 2'' x 8'' floor joists, and the remainder to the addition of head room in the loft.

After the Zoning Administrator conducted a site visit, on June 19, 2004, Appellee-Applicants filed a Zoning/Building Application, requesting approval to ''replace cabin lost in fire in May 2004.  Same structure except 20'' higher.''  The Zoning Administrator denied the application on the basis that a variance was required for a "'new, non-complying structure'' that ''does not meet shoreline and sideline setbacks.''  Appellee-Applicants appealed the Zoning Administrator's decision to the ZBA and also sought a variance from the ZBA.  The ZBA held a public hearing on July 14, 2004.  From the text of the written decision issued on August 25, 2004, it appears that at the July 14, 2004, meeting the ZBA actually voted to deny the variance on the basis that no variance was required under §305 of the Zoning Bylaws.  It issued its decision in writing, signed by the ZBA

Chairperson, on August 25, 2004. Appellant Gary Barnes received his copy in the mail postmarked September 2, 2004.

Appellants argue that the ZBA did not render its decision within forty-five days of the July 14, 2004, ZBA hearing on Appellee-Applicants variance application, as required by §507.4 of the Bylaws and the substantially similar state statute, 24 V.S.A. §4464(b)(3) (as amended effective July 1, 2004, formerly §4470(a)). They argue that the variance was deemed to be approved as of August 28, 2004, that they took their appeal from that deemed approval 'decision,' and that the ZBA lacked jurisdiction later to decide that no variance was required.

The ZBA decision was rendered at the public hearing when the vote was taken on July 14, 2004. Even if it had not been voted on in public at the hearing, the decision was issued in written form on August 25, 2004, within the required 45-day period after the July 14, 2004, hearing. The fact that it was not received by Appellants until about a week later does not trigger the deemed approval remedy.

The ZBA rendered a timely decision on July 14, 2004, when it voted to deny Appellee-Applicants' request for a variance. The written decision signed by the ZBA chair on August 25, 2004 was also timely under §4464(b)(3) (as amended). The only question is whether the fact that it was mailed to an interested party so that it was

received six business days later should result in deemed approval of the variance. We conclude that it should not. As in Leo's Motors, Inc. v. Town of Manchester, 158 Vt. 561, 565 (1992), even if the ZBA had failed to send the written notice in a timely fashion to the landowner-applicant (rather than to another interested party):

> the purpose of the statute will be best served if we read § 4470(a) to require that a decision be rendered within forty-five days, whether or not the town observes the directive in that statute to "send to the appellant, by certified mail, a copy of the decision" within that period, so long as the failure to send a copy is inadvertent and not the result of a policy or purpose to withhold notice of the decision. By "rendered" we mean the decision is finally made before the expiration of the forty-five day period, regardless of when, or if, the decision is reduced to writing, or made in writing.

Leo's Motors v. Town of Manchester, 158 Vt. 561, 565 (1992) (internal citations omitted). The circumstances of this case do not reflect any ZBA indecision or protracted deliberations for which the remedy of deemed approval would be appropriate. See, e.g., Appeal of Newton Enterprises, 167 Vt. 459, 465 (1998); Appeal of Ashline, 2003 VT 30; Appeal of Angelino, Docket No. 261-11-02 Vtec (Vt. Envtl. Ct., Jan. 20, 2004); compare, In re Appeal of McEwing Services, LLC, 2004 VT 53.

Appellants argue generally that Appellee-Applicants could not reconstruct the camp building in its original location without a variance or a permit, and that it does not qualify for either a variance or a zoning permit.

Under §305, any building or structure damaged by fire "may be repaired or reconstructed to the extent of its prior use." Section 305.1 provides that a "zoning permit will be required if work is not begun within two years and completed within four years from the date of the damage." Appellee-Applicants were therefore entitled to reconstruct the non-complying camp building (and outhouse) "'to the extent of its prior use" without a zoning permit, if they began construction within two years of the fire.

Other than with respect to the additional height and the exterior chimney or stovepipe, discussed below, Appellee-Applicants restored the camp building and outhouse to the extent of their prior use and began the work within two years of the date of the damage, so that no permit is required under §305.1. It remains a seasonal camp use, not a year-round use. The water supply continues to be drawn from the lake; the waste disposal method continues to be an outhouse.

Appellants also argue that a permit was required for the construction under §502.1, which requires a zoning permit for "land development," even if it was exempt from a permit under §305.1. Because more specific provisions govern over more general ones,

Stevenson v. Capital Fire Mut. Aid Sys., 163 Vt. 623, 625 (1995), and because we avoid construing a regulation so as to render any sections surplusage, Bennington School, Inc., 2004 VT 6, ¶ 12, we must conclude that the more specific §305, applicable to reconstruction of a non-complying structure destroyed by fire, controls over the provision requiring a permit generally for any land development.

Appellants also argue that Appellee-Applicants must apply for a variance[3] to increase the height of their non-complying camp by twenty inches.  The camp building is located wholly within the required 75-foot lake setback.  Half of it (the northerly five feet) is located within the 25-foot north side setback.  Although the taller rebuilt camp building remains under the maximum 35-foot height for the Shoreland zoning district, Bylaws Table 202-4, its height is greater than the camp building's prior height within the lake setback area and within the north side setback.  The new camp building therefore occupies more of the volume of setback space than did the prior camp building.  If an exterior chimney were to extend farther into the north side setback than did the former camp chimney or stovepipe, it may also represent an increase of the footprint within the side setback.

While Appellee-Applicants would not have needed a variance to reconstruct their camp to the same extent and in the same location as their prior non-complying camp, the additional height (and additional exterior chimney, if any) does require a variance and a

zoning permit, as it does not fall within the §305 exemption. See In re Appeal of Tucker, Docket No. 123-7-98 Vtec (Vt. Envtl. Ct., Aug. 2, 1999); aff'd' Docket No. 1999-399 (Vt. Sup. Ct., Mar. 10, 2000) (three-justice panel, unpublished). Therefore, we must vacate the ZBA's decision that no variance was required, and must remand this matter to the ZBA for it to determine in the first instance whether to grant the variance for the additional height[4] (and additional exterior chimney, if any) within the setback areas. If the ZBA were to grant a variance, then Appellee-Applicants would be eligible to obtain a zoning permit from the Zoning Administrator for those features.

'

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellee-Applicants'' Motion for Summary Judgment is GRANTED, Appellants' Motion for Summary Judgment is DENIED, and the Town's Motion for Summary Judgment is granted in part and denied in part, as to Question 1 and in part as to Question 4, in that no zoning permit or variance is required for the restoration of the existing non-complying structure, to the extent it remained within the same footprint and the same height. Appellee-Applicants' Motion for Summary Judgment is DENIED, Appellants' Motion for Summary Judgment is GRANTED, and the Town's Motion for Summary Judgment is granted in part and denied in part, as to Questions 3 and 5, and in part as to Question 4, in that both a zoning permit and variance are required for the additional 20-inch height of

the structure within the north side setback and the lake setback, and for the additional exterior chimney, if any, within the north side setback.

The decision of the ZBA regarding Appellee-Applicants' variance application is hereby VACATED and REMANDED for consideration of that application as it relates to a variance for the additional twenty inches of height within the north side setback, and for the additional twenty inches of height within the lake setback, and for the additional exterior chimney, if any, within the north side setback.

'

Done at Berlin, Vermont, this 18th day of May, 2005.

'

'

'

'

'

_____

Merideth Wright

Environmental Judge

---

[1]If a structure qualifies as an "incidental structure," as opposed to an "'accessory structure," it does not require a permit. Bylaws Appendix. A, Incidental Structure. The required elements of an incidental structure are that it be incidental to and on the same lot as the principal use or structure, that it not be attached to a permanent foundation, that it be minor and easily and immediately moveable, that it be smaller than 100 square feet in

area and 10 feet in height, and that it be at least 5 feet from a property line and 35 feet from the edge of a Town right-of-way or public road.

[2] While Appellants state that this fact is disputed, they provide no countering affidavits or other information suggesting that the new camp building is any closer to the boundary than the old one or that its footprint has changed, other than their contention that an exterior chimney or stovepipe extends one foot farther into the side setback than before.

[3] This argument applies equally to the exterior chimney or stovepipe if it were to increase the footprint within the north side setback beyond that of the former camp building.

[4] Please note that only the additional 20 inches of height would require a variance, not the portion of the camp building equivalent to the prior camp building.