**STATE OF VERMONT**
**SUPERIOR COURT - ENVIRONMENTAL DIVISION**

|                                              |   |                             |
|----------------------------------------------|---|-----------------------------|
| In Re: Okemo LLC PUD Amendment               | { | Docket No. 221-11-09 Vtec   |
|   (Ranta Barn Demolition)          | { |                             |

## Decision in On-the-Record Appeal

In this on-the-record proceeding, Okemo, LLC ("Applicant") [1] appeals a decision by the Town of Ludlow Development Review Board ("the DRB") granting Applicant's application to amend its Planned Unit Development located in the Town of Ludlow, Vermont. The DRB granted Applicant's request to demolish a dilapidated barn, but it imposed conditions on its approval that Applicant finds objectionable.

Applicant is represented by Lawrence G. Slason, Esq. The Town of Ludlow is represented by J. Christopher Callahan, Esq. Each party has submitted legal briefs that reference the record in this on-the-record appeal. Based upon those filings, and with reference to the record summarized in the Background section that follows, we render the following determinations.

## Background

Applicant owns and operates Okemo Mountain Ski Area ("Okemo Mountain") in the Town of Ludlow, Vermont ("the Town"). In 2007, the Town implemented the Town of Ludlow Zoning and Flood Hazard Regulations ("the Regulations"), which control our analysis here.

At issue in this case is the Ranta barn, located on the Ranta Farmstead ("the Farmstead") adjacent to the Jackson Gore development at Okemo Mountain. The Farmstead was recognized in the 1988 Historic Sites and Structures Survey and listed on the Vermont State Register of Historic Places in 1993. Applicant purchased the Farmstead and surrounding lands in 1997 for the purpose of future development in connection with its Jackson Gore development. Although a variety of buildings once existed on the Farmstead, it appears that, at the time of Applicant's pending application, only the house, garage, and barn remained.

---

[1] Many of Applicant's Questions in its Statement of Questions, as well as its arguments in its briefs, are phrased for de novo review. However, as this is an on-the-record appeal, we will construe those Questions and arguments as if they were framed for on-the-record review.

In 2000, the DRB granted Applicant a Planned Unit Development ("PUD") permit, Permit No. 152-00-PUD, for the Jackson Gore area of Okemo Mountain. The PUD permit expanded the then-existing Okemo Mountain Resort to include new ski trails and a snowboard half pipe, chair lifts, a 117-unit condominium hotel, guest facilities, commercial amenities, parking areas, and utility infrastructure. Permit No. 152-00-PUD included 32 detailed conditions, including the following three:

> 5.d.1. The 51.16 acres of open space land are to be developed by the Applicant as open land for the use of the public with walking and bike paths (primitive, not paved), cross-country ski trails (ungroomed, but may be groomed at Applicant's option), and picnic sites and tables for day use and pedestrian access only, with access provided directly from the 'day use' parking lots . . .

> 6. . . . [Applicant] is obligated by this permit to design, develop and maintain the land and trails, paths, and picnic areas accessible to the public within the 51.16 acres to be delineated on the Final Parcel Map of this PUD . . .

> 8. The old Ranta Road beyond the Ranta House has historical significance and shall be maintained as such.

When Permit No. 152-00-PUD was granted, the Jackson Gore PUD was located in the Mountain Recreation District, a district in which PUDs are classified as conditional uses.[2] In 2004, the Jackson Gore PUD was expanded to 166± acres and became the Jackson Gore Recreational District, a separate and independent zoning district. See Regulations § 475. The Farmstead was identified as area K on the Jackson Gore PUD map.

On November 26, 2008, the District 2 Act 250 Environmental Commission issued a state land use permit specifically authorizing Applicant to demolish the Ranta barn. The Commission imposed nineteen conditions in the permit, some of which referred to the Ranta house but none of which required reconstruction of the Ranta barn.

On May 12, 2009, Applicant submitted an application to the DRB seeking to amend Permit No. 152-00-PUD to allow for demolition of the Ranta barn. The DRB held its first public hearing on the amendment application on June 8, 2009. The hearing was continued to July 13, 2009 and then again to September 14, 2009. Sometime in early September 2009, before the

---

[2] The 1990 version of the Regulations, the version of the Regulations which apparently preceded the 2007 version and was in place when Permit No. 152-00-PUD was granted, is not included in the record. However, the parties do not appear to dispute that the Jackson Gore PUD was originally located in the Mountain Recreation District, and it is clear from Section 470 of the current Regulations that PUDs are conditional uses in that District.

continued DRB hearing, a substantial portion of the Ranta barn collapsed. On September 10, 2009, the Town of Ludlow Municipal Manager sent Applicant a letter stating that the collapsed barn posed a danger to the public and requesting that Applicant demolish the remaining structure. Applicant demolished what was left of the barn on September 11, 2009 but did not remove the barn's remnants. The DRB held its final public hearing on Applicant's amendment application on September 14, 2009.

Approximately one month later, on October 16, 2009, the DRB issued a decision on Applicant's PUD amendment application ("2009 Decision"), the decision that is at issue in this appeal. In its 2009 Decision, the DRB granted Applicant's request to amend Permit No. 152-00-PUD to allow Applicant to demolish the dilapidated Ranta barn. In an effort to ensure that Applicant's proposed demolition complied with the Regulations, however, the DRB imposed several conditions requiring Applicant to (1) rebuild a historical representation of the Ranta barn in its original size; (2) maintain an apple orchard on the Farmstead; and (3) create a historical site destination, including well-marked trails open to the public. In re Okemo LLC PUD Amendment, Notice of Decision, at 4-5 (Town of Ludlow Dev. Review Bd. Oct. 16, 2009). Applicant timely appealed the DRB's 2009 Decision to this Court for on-the-record review.

## Discussion

Applicant sets forth eight arguments in this on-the-record appeal. Because we conclude, as discussed below, that we must vacate the DRB's 2009 Decision, we substantively address only three of Applicant's arguments: (1) that demolition of the Ranta barn does not require any type of municipal land use permit; (2) that if demolition of the Ranta barn does require a municipal land use permit, it requires only a zoning permit, not a permit to amend the Jackson Gore PUD; and (3) that the conditions imposed by the DRB in its 2009 Decision were not rationally related to the pending application and lacked legal authority under the Regulations or applicable statutes. We briefly address Applicant's additional arguments in Part IV below.

For the reasons detailed below, we conclude that the DRB erred by accepting and considering Applicant's application to demolish the Ranta barn as an application to amend the Jackson Gore PUD permit. Demolition of the barn did not require a municipal land use permit under the Regulations. However, even if the definition of "land development" contained in the Regulations could be read in such a way as to include the demolition or removal of a building or structure, at most Applicant would be required to apply for a zoning permit, not an

3

amendment to the pre-existing PUD permit. Moreover, the DRB erred by imposing additional conditions on Applicant as a result of its application to demolish the Ranta barn.

## I. **Standard of Review**

In an on-the-record appeal from a decision by a municipal panel, our role as the reviewing tribunal is similar to that of the Vermont Supreme Court when reviewing appeals from administrative bodies. That is, we do not take new evidence or complete our own determination of the facts. Instead, we uphold the municipal panel's factual findings if they are supported by substantial evidence in the record. See In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 7, 186 Vt. 568. We review the municipal panel's legal conclusions without deference unless such conclusions are within the panel's area of expertise. Id.

## II. **Whether a Municipal Land Use Permit is Required**

Applicant contends that the Regulations do not require a municipal land use permit for the demolition and removal of the Ranta barn. In the alternative, Applicant contends that, if the Court concludes that the Regulations could be interpreted to provide that demolition and removal of a structure or building constitutes "land development," at most such demolition and removal would require a zoning permit under Section 220 of the Ludlow Regulations, but would not require an amendment to the pre-existing Jackson Gore PUD permit. We therefore proceed to an interpretive analysis of what constitutes "land development" under the Ludlow Regulations.

We interpret a zoning ordinance using the familiar rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. We will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. If the plain language resolves the interpretive conflict, "there is no need to go further, always bearing in mind that the paramount function of the court is to give effect to the legislative intent." Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986). However, if the plain language is ambiguous, we are directed to employ an interpretation that shows the least interference with property ownership. See In re Appeal of Bennington Sch., Inc., 2004 VT 6, ¶ 12, 176 Vt. 584 ("Because land use regulation is in derogation of the common law, any ambiguity is resolved in favor of the landowner.") (quoting In re Miserocchi, 170 Vt. 320, 324 (2000)).

4

Section 4411 of Title 24 of the Vermont Statutes Annotated provides that a municipality, through its zoning bylaws, "may permit, prohibit, restrict, regulate, and determine land development, including the following: . . . (2) Dimensions, location, erection, construction, repair, maintenance, alteration, razing, removal, and use of structures." Section 220 of the Regulations provides that "[n]o land development may commence . . . unless a Zoning Permit shall have been duly issued by the Administrative Officer." Both Article 7 of the Regulations and 24 V.S.A. § 4303(10) define "land development" as "the division of a parcel into two or more parcels, the construction, reconstruction, conversion, structural alteration, relocation, or enlargement of any building or other structure . . . and any change in the use of any building or other structure, or land, or extension of use of land."[3] Noticeably absent from the Regulation's definition of "land development" is the demolition or razing of buildings.

Pursuant to 24 V.S.A. § 4411(a)(2), the Town could have included demolition, razing, or removal of buildings in its definition of "land development." However, the absence of these terms from the Regulation's definition indicates that the Town did not choose to include those activities. The omission of any such term from the enumerated list of actions constituting "land development" under the Regulations unambiguously indicates that the Town did not include demolition or removal of a structure or building in the activities requiring a zoning permit. Importantly, the plain language of the regulatory definition of "land development" fails to provide adequate notice to property owners or their neighbors that a zoning permit is required for demolition or removal of structures or buildings in Town.

Moreover, Applicant took action to demolish what remained of the Ranta barn at the direction of the Town of Ludlow Municipal Manager. The Town Manager's directive did not indicate that a zoning permit was required to carry out the demolition. Also, the Regulations do not contain a provision that directs or suggests that Applicant was required to obtain a zoning permit to raze the still-standing portion of the Ranta barn. Neither the Regulations nor the Town Manager's directive gave Applicant notice that it should apply for a permit. We find no basis in the Regulations for requiring Applicant to obtain a municipal zoning permit, nor an

---

[3] Although the parties submitted a portion of the Regulations for our on-the-record review, they failed to include Article 7, or the "Definitions" section, in the record. We therefore took judicial notice of the definition of "land development" found in the applicable version of the Regulations on the Town's website.

5

amendment to the pre-existing PUD permit, when the sole activity was the razing of a partially collapsed barn.

Since the Regulations contain no foundation for defining the barn's demolition as "land development," the Regulations provide no authority for requiring Applicant to obtain a municipal land use permit to demolish the Ranta barn. Approval to amend the pre-existing Jackson Gore PUD permit was also therefore unnecessary, since the requested activity—barn demolition—did not impact the pre-existing PUD permit. Consequently, the DRB erred by accepting and considering Applicant's application for an amendment to the Jackson Gore PUD.

Furthermore, even if demolition or removal of a building or structure can be considered "land development" under Regulations Section 220, we find no provision in the Regulations that would require Applicant to obtain more than a zoning permit to demolish the Ranta barn. Although the Farmstead generally and the Ranta house specifically were discussed in Permit No. 152-00-PUD, which created the Jackson Gore PUD, approval of the PUD did not include any discussion of the Ranta barn or a condition requiring its maintenance or upkeep. Thus, demolishing the portion of the barn that remained standing does not impact any part of the previously approved Jackson Gore PUD permit because the Ranta barn was never included in that PUD. We therefore cannot discern a legal foundation for requiring Applicant to apply for and receive an amended PUD permit.

The fact that Applicant incorrectly submitted an application to amend the Jackson Gore PUD permit does not affect our analysis. It was up to the Zoning Administrator, and later the DRB, to correctly respond to Applicant's request.

Because we conclude that no municipal land use permit was required for Applicant to demolish and remove the Ranta barn, or, alternatively, at most a zoning permit was necessary, we conclude that the DRB erred by accepting and considering Applicant's request for an amendment to the Jackson Gore PUD permit. Accordingly, we conclude that the DRB's 2009 Decision must be **VACATED**.

III.     **Whether the DRB Erred by Imposing Conditions of Approval**

Applicant argues that the DRB erred by imposing conditions of approval requiring Applicant to maintain an apple orchard, designate a portion of its property as an historic destination area open to the public, and rebuild a historic replica of the Ranta barn. Specifically, Applicant contends that it did not receive fair notice that, by submitting an application to

6

demolish the Ranta barn, it could be subject to these conditions. In reply, the Town contends that the conditions imposed by the DRB are reasonable and necessary and are supported by evidence in the record. Although we conclude, as discussed above, that no amendment to the Jackson Gore PUD permit was necessary, we consider Applicant's argument regarding the conditions included in the DRB's 2009 Decision. For the reasons discussed below, we conclude that, in considering the application for an amendment, the DRB erred by imposing these additional conditions.

In the context of a pending application to amend a pre-existing PUD permit, the DRB may not impose conditions that do not have a discernible connection with the changes contemplated in the requested amendment. See Century Partners, LP PUD, No. 210-9-06 Vtec, slip op. at 4 (Vt. Envtl. Ct. May 10, 2007) (Durkin, J.). Here, Applicant submitted an application for a PUD amendment containing only one request: authority to demolish the Ranta barn. The amendment application in no way addressed the alleged apple orchard; in fact, the Town acknowledges that "the existence of the apple orchard is not in the record." (Brief of the Appellee 14, n.2, filed Oct. 3, 2011.) Nor did Applicant's amendment application discuss the property's surrounding trails or parking areas. Thus, if the DRB wished to impose conditions of approval in granting Applicant's amendment application, it was limited to imposing conditions related to the "development" at issue: the razing of the Ranta barn. Accordingly, the DRB erred by imposing conditions requiring Applicant to maintain an apple orchard and designate a portion of its property as a historic destination area open to the public.[4]

The DRB also erred by requiring Applicant to rebuild an historic replica of the Ranta barn. As discussed above, the Ranta barn was not included in the original Jackson Gore PUD. While Permit No. 152-00-PUD requires Applicant to maintain the "old Ranta Road beyond the Ranta house," nothing in the permit specifically requires Applicant to maintain the Ranta barn or rebuild it in case of collapse. In fact, Permit No. 152-00-PUD does not even mention the Ranta barn.

If the DRB wished to impose a duty on Applicant to maintain the barn as a historic structure, the DRB should have given Applicant notice of that duty well before the barn

---

[4]  Question 4 of Applicant's Statement of Questions asks whether the DRB's condition requiring Applicant to "mothball" the Ranta house to prevent further deterioration is reasonable and necessary. This condition also has no "discernible connection" to Applicant's application for authority to demolish the Ranta barn because the Ranta house was not at issue in that application. See Century Partners, No. 210-9-06 Vtec, slip op. at 4. Accordingly, the DRB erred by imposing that condition.

collapsed by incorporating it as a condition in the prior permit, Permit No. 152-00-PUD. Applicant then would have been on fair notice of the condition and could have either accepted it or challenged it on appeal. See Appeal of Farrell & Desautels, Inc., 135 Vt. 614, 617 (1978) (stating that "[c]onditions imposed by a zoning board must be expressed with sufficient clarity to give notice of the limitations on the use of the land" because otherwise applicants would be unable to appeal the limitations as they would have no notice that the limitations were imposed); see also Sullivan & Schiavone v. Lakeview Inn Enters., LLC & Dov'e Enters., LLC, No. 125-7-09 Vtec, slip op. at 7-8 (Vt. Super. Ct. Envtl. Div. Aug. 2, 2010) (Durkin, J.) ("[T]he guiding principle is to provide all interested parties fair notice of what can and cannot be done with the land in question."). The DRB's 2009 Decision cannot be the first instance where such a duty arises. Accordingly, the DRB erred by requiring that Applicant rebuild an historic replica of the Ranta barn without any prior notice or condition in the prior PUD permit that Applicant was obligated to maintain the Ranta barn.

## IV. Applicant's Additional Arguments

In addition to the arguments above, Applicant also contends that (1) the DRB erred by failing to identify the legal standards on which its decision was based; (2) the DRB's 2009 Decision was an exercise of arbitrary and standardless discretion and therefore must be vacated; (3) the DRB engaged in an unconstitutional taking of Applicant's land by imposing the conditions; (4) the DRB erred by concluding that the newly constructed barn would be considered one of the eight non-residential buildings authorized in the Jackson Gore Recreational District; and (5) the DRB erred by concluding that demolition of the Ranta barn resulted in an undue adverse effect on the character of the area if certain conditions were not imposed.[5]

Given the determinations already announced in this Decision, it is unnecessary for us to address Applicant's contentions that the DRB's 2009 Decision must be vacated because it did not properly identify the legal standards on which it was based and that the DRB's 2009 Decision was an exercise of arbitrary and standardless discretion. As discussed above, we are vacating

---

[5] The Town contends in its Answer Brief that Applicant did not address Questions 3, 4, 6, 8, and 10 from its Statement of Questions in its Appellate Brief. Applicant admits that it chose not to brief Question 10, and therefore we do not address that Question on appeal. McAdams v. Town of Barnard, 2007 VT 61, ¶ 8, 182 Vt. 259 ("Arguments not briefed are waived."). We conclude that Applicant sufficiently briefed the remaining Questions.

8

the DRB's 2009 Decision on other grounds; namely, that no permit was required, or, at most, only a zoning permit was necessary, and not an amendment to the pre-existing Jackson Gore PUD permit. Accordingly, we decline to address whether the DRB's 2009 Decision contained appropriate legal standards or was arbitrary. For the same reason, we also do not consider Applicant's argument that the DRB's imposition of conditions was a taking or that the DRB erred by considering the barn as one of the eight non-residential buildings authorized in the District. There is no need to address these issues in light of our ruling that the DRB's 2009 Decision must be vacated.

Finally, we conclude that the DRB was not required to determine whether demolition of the Ranta barn resulted in an undue adverse effect on the character of the area. It appears that a review of a project's effect on the character of the area is necessary under the Regulations only with respect to requests for a variance or for conditional use approval. See Regulations § 252.1 (stating that the DRB may grant a variance if, among other things, the variance "will not alter the essential character of the neighborhood or district in which the property is located"); § 260.3 (stating that the DRB must determine that a proposed conditional use will not result in an undue adverse effect on "the character of the area affected"). Applicant has not requested a variance here, and neither demolition nor removal of buildings or structures is listed as a conditional use in either the Jackson Gore Recreational District or the prior Mountain Recreation District. Moreover, as discussed above, demolition of the Ranta barn did not require a municipal zoning permit. At most, however, a zoning permit was required; an amendment to the Jackson Gore PUD permit was not necessary. Therefore, although a PUD is a conditional use in the Mountain Recreation District, Applicant proposes no changes to the Jackson Gore PUD, and, to the extent we can determine, no conditional use review is necessary. Accordingly, the DRB was not required to engage in an analysis of whether Applicant's proposed demolition will have an undue adverse effect on the character of the area.[6]

## Conclusion

For the reasons detailed above, we conclude that the DRB erred by accepting and considering Applicant's application for demolition of the Ranta barn as an amendment to the

---

[6] Although not specifically addressed in Applicant's briefs, Applicant's Statement of Questions includes the question of whether demolition and removal of the Ranta barn will result in an undue adverse effect on the bylaws and ordinances then in effect. We decline to address this issue because conditional use review is not required. See 24 V.S.A. 4414(3)(A)(iv).

9

pre-existing Jackson Gore PUD permit. Demolition of the barn did not require a municipal land use permit. However, even if the definition of "land development" contained in the Regulations could be read in such a way as to include the demolition or removal of a building or structure, at most Applicant would be required to apply for a zoning permit, not an amendment to the pre-existing PUD permit. Moreover, the DRB erred by imposing additional conditions on Applicant as a result of its application to demolish the Ranta barn. Accordingly, the DRB's 2009 Decision is **VACATED**.

Done at Newfane, Vermont this 5th day of April, 2012.

_____
Thomas S. Durkin, Environmental Judge