STATE OF VERMONT

ENVIRONMENTAL COURT

}

Appeal of Benoit & Kane } Docket No. 148-8-

04 Vtec

}

Decision on Cross-Motions for Summary Judgment

Appellants Gregory P. Benoit and Deborah Kane appealed from a decision of the

Development Review Board (DRB) of the City of St. Albans, dated August 12, 2004,

denying their application for approval of the after-the-fact conversion, from day care to

residential use, of a second building on the lot, under §602[1] of the Land Development

Regulations.    Appellants are represented by Michael S. Gawne, Esq.; the City is

represented by Robert E. Farrar, Esq; Interested Persons Paula B. Johnson and

Christopher J. Dermody entered an appearance and represent themselves.

Appellants and the City have each moved for summary judgment.  The following

facts are undisputed unless otherwise noted.

Appellants own property at 53 High Street in the High Density Residential zoning

district.    The former owners, Alan and Beverly Hayford, conveyed the property to

---

[1] See City of St. Albans v. Hayford & Benoit & Kane, Docket No. 161-9-03 Vtec, slip op.

at 7 (Vt. Envtl. Ct., June 1, 2004).

Appellants in 2003.  The Hayfords purchased the property in mid-1976, prior to the adoption of the first zoning ordinance for the City in March of 1977.

The property is 20,900[2] square feet in area, and has a lot width of 99 feet.  The property now contains two buildings, which occupy 20% of the lot area.  Both buildings were erected long before the adoption of zoning in the City.  The property is served by municipal water and sewage disposal services.  The main building now contains five dwelling units; a second, separate building in the rear of the property is the subject of this appeal, and now contains one dwelling unit.  When the Hayfords acquired the property in 1976, the rear building was in use as a print shop, and the front building was in use as four dwelling units (apartments).  In 1976, the Hayfords applied for and were granted a building permit for general repair of the rear building to convert it to a nursery school.  This was not a zoning permit, as zoning had not yet been adopted; rather, it was a building permit as allowed under 24 V.S.A. §3109.  As of that time, the property contained seventeen parking spaces; however, the materials provided to the Court do not contain any diagram of the parking layout or whether it has changed over time.

The rear building is located approximately four feet from the east or rear property line and approximately two feet from the south side property line.  The front building is

---

[2]  The City asserts that the lot is listed as only 19,700 square feet in area on the tax map, but does not otherwise contest the deeded area.

located[3] 24 feet from the front property line, 13 feet from the nearest side property line,

and 89 feet from the rear property line.

---

[3] Measurements are taken from Exhibit 8 in Docket No. 154-9-01 Vtec; the parties did not provide a sketch or site plan showing the layout of the buildings and the various measurements to the property lines in any of the three cases now pending before this court.

Thus, as of the adoption of the March 1977 zoning ordinance, it appears[4] that the property was in a multi-family residential zoning district. (See description of High Density Residential zoning district (in Table 204.4 of the Zoning Regulations in effect in 1987) as "similar to the Multi-Family Residential District in the former zoning ordinance.") It appears that the minimum lot size for the district was 9,500 square feet, the minimum lot area per dwelling unit was 3,000 square feet, the minimum lot width was 75 feet, the minimum front setback was 20 feet, the minimum side setback was 10 feet, and the minimum rear setback was 20 feet for the principal building and 4 feet for an accessory building. The maximum allowed lot coverage was 35%.

Section 304 allowed only one principal building per lot, unless otherwise approved as a planned unit development or planned residential development. Section 401 required site plan approval from the Planning Commission as a prerequisite to the issuance of a zoning permit "for any use or structure, except for one family and two family dwellings." Sections 602 and 603 allowed any non-conforming buildings or uses to continue indefinitely, but not to be expanded, §602.1, or to increase the building's degree of non-compliance, §603, and not to be changed to another use without "approval by the Zoning Board, and then only to a use which, in the opinion of the Zoning Board[,] is of the same

---

[4] The 1977 ordinance has not been provided to the Court, so that it is not entirely clear which requirements went into effect with that ordinance, and which were added in the ordinance in effect in 1986-87; however, any discrepancies do not appear to be material to the present case.

or a more restricted nature." §602.2.

Thus, in its configuration and use as of March of 1977, the property was non-conforming in only three respects: the side and rear setback of the rear building, and in having more than one principal building on the lot. The rear building was non-conforming as to its side setback[5] regardless of whether it was in use as an accessory building or whether it was a second principal building on the property. Assuming that the print shop was not being operated as a home occupation by a resident living in the main building, the property was also non-conforming in having more than one principal building, §304, and as to the rear setback of the rear building (considered as a principal building). If the print shop was being operated as a home occupation, §331, then the rear setback would have met the requirement for an accessory building and the property would have met the requirement of only one principal building on the property.

---

[5]   This nonconformity renders the rear building a non-conforming use as well as a non-complying structure. In re Appeal of Miserocchi, 170 Vt. 320, 323-24 (2000) (non-complying structures are also non-conforming uses under the state statute).

The Hayfords converted the rear building to day care or nursery school use under a building permit issued prior to the adoption of the 1977 zoning regulations. For the purposes of the present case, we need not determine whether that approval gave them a vested right to accomplish that conversion without obtaining approval for that change of use under §602.2 (as the rear building was non-conforming as to the side setback), or obtaining site plan approval under §401 (prior to the issuance of a zoning permit for the day care or nursery school use). We also need not reach the question of the number of children served by the day care use, or whether conversion of the rear building for that purpose also required conditional use approval under §332.

At some time in mid-1986, the Hayfords converted the interior space of the main building from four dwelling units to five dwelling units. This change in the number of units did not render the property more non-conforming, assuming the applicable zoning regulations allowed multi-family use as a permitted use in the district, as it still met the requirement of 3,000 square feet of lot area per dwelling unit and still had an adequate number of parking spaces. While this conversion did not require approval under §602.2, it should have obtained site plan approval under §401, as a prerequisite to obtaining a zoning permit from the Zoning Administrator. If the lack of site plan approval was

improperly authorized as a result of error by the Zoning Administrator,[6] it left the status

of the building as non-conforming for failure to have site plan approval as well.

---

[6] We note that if a zoning administrator authorizes a nonconformity to occur or to be enlarged in error, it remains a nonconformity subject to the provisions of the ordinance regarding nonconformities.  24 V.S.A. §4303(13), (14) and (15) (2004).

At some time in early[7] 1987, the Hayfords moved the day care operations out of the rear building, leaving it vacant. They then converted the rear building to a sixth dwelling unit and began renting it out.[8] This change in the number of units on the property did not render the property more non-conforming, assuming the applicable zoning regulations allowed multi-family use as a permitted use in the district, as it still met the requirement of 3,000 square feet of lot area per dwelling unit, and still met the requirements for two parking spaces per unit. In fact, it may have made the property less non-conforming, if the use of the rear building for a residential unit made the rear building an accessory structure to the multi-family residential use of the main building.

After a fire in 1993 damaged one of the five apartments in the main building, the Hayfords applied for and received a zoning permit to repair it. The issuance of that zoning permit recognized that the property was allowed to continue with five dwelling units in the main building, whether as a prior non-conforming use or as an allowed or permitted use, and was the basis for the decision in Appeal of Hayford, Docket No. 154-9-01 Vtec (Vt. Envtl. Ct., Feb. 26, 2003), which overturned a notice of violation regarding the fifth

---

[7] Appellants' Amended Statement of Material Facts at ¶2, filed April 4, 2005.

[8] The decision in Appeal of Hayford, Docket No. 154-9-01 Vtec (Vt. Envtl. Ct., Feb. 26, 2003), determined that, whatever discussion may have occurred between the Hayfords and the Zoning Administrator, the City was not estopped from proceeding with enforcement regarding the residential unit in the rear building. No party appealed that decision; estoppel is not at issue in the present case.

dwelling unit in the main building.

In March of 1998, the City adopted new Land Development Regulations, which increased the minimum lot size to 10,000 square feet; increased the minimum lot area per dwelling unit to 5,000 square feet; increased the minimum side setback to 15 feet for other than single-family dwellings; set a minimum side setback of 5 feet for accessory structures; and increased the minimum rear setback to 5 feet for accessory structures. §304. The requirement of no more than one principal building per lot was retained in §403 of the 1998 Regulations. In the High Density Residential zoning district, multi-family dwellings became conditional uses, so that a new or enlarged multi-family dwelling required conditional use approval from the DRB under the standards in §502.

Thus, as of the adoption of the 1998 Regulations, the property became non-conforming as to any more than four dwelling units, due to the area-per-dwelling-unit requirement, and became non-conforming as not holding conditional use approval. The main building became non-conforming on its north side as to the new 15-foot side setback requirement. The rear building became more non-conforming as to the side setback and became non-conforming as to the rear setback even if treated as an accessory structure.

Section 304 of the 1998 Regulations also increased the maximum lot coverage to 50%, and added detailed requirements for off-street parking and landscaping, in accordance with §§415 and 416. Without a plan of the parking and landscaping on the site, we cannot determine whether these changes made the property non-conforming as to

lot coverage,[9] as to the location of the off-street parking spaces, or as to the associated landscaping requirements. The fact that Appellants applied for a variance from those requirements suggests that the property did not conform to some aspect of these requirements. Calculated as two parking spaces per dwelling unit plus one guest space for every three dwelling units, nine (or ten) spaces would be required for four dwelling units, eleven (or twelve) for five dwelling units, and fourteen for six dwelling units, §415.7; if the property retained all seventeen of its original spaces it remained conforming with the number of required parking spaces.

Section 304(C)(as amended in 2001) requires site plan review "for all uses other than single-family and two-family dwellings" pursuant to Article 7. Section 701(B)(1) requires site plan approval for three classes of proposals: those that do not involve new construction or enlargement of any structure, but do modify the arrangement of parking, landscaping or other requirements of §704; those that do involve new construction or enlargement of existing structures, but do not modify parking, landscaping or other requirements of §704; and those that both involve new construction or enlargement of any structure and modify parking, landscaping or other requirements of §704.

---

[9]  Defined in the 1998 Regulations to include land covered by buildings, parking spaces, and driveways; the former regulations only included land covered by buildings.

Sections 602 and 603 of the 1998 Regulations, as amended, continued to allow non-conforming buildings or uses to continue indefinitely, but not to increase a building's degree of non-compliance, §603(B). Section 602(D) allows "any residential use which under these regulations is non-conforming [to] be altered or extended, including the addition of accessory structures, if such alteration or extension does not result in additional dwelling units or the addition of other non-conforming uses." Section 602(E) prohibits the alteration or extension of any non-conforming parking in this zoning district, "except to conform to these regulations."

After a Certificate of Occupancy was denied, soon after the adoption of the 1998 Regulations the Hayfords applied for approval of the six dwelling units, configured as five units in the main house and one unit in the rear building. The ZBA denied the application, ruling that the property required five variances: regarding the lot area, §304(D); the sideline setbacks, §304(D); the rear setback (referring to the rear building as a principal building), §304(D); landscaping around the perimeter of a parking lot, §415.4(B); and parking within the required setbacks, §417.4. The ZBA also denied variances for those items. The ZBA's May, 1998, decision was not appealed and became final. In July of 1998, the Zoning Administrator issued a notice of violation, later vacated[10] on procedural

_____

[10] The ZBA had failed to act on the appeal of that notice of violation within the statutory time limit and therefore vacated it; summary judgment was ultimately granted in favor of the Hayfords in a subsequent Superior Court enforcement action due to the invalidity of that underlying

grounds, for the "use of this property for six dwelling units when only four have received

approval."

---

notice of violation.   Garceau v. Hayford, Docket No. S98-99 Fc (Franklin Superior Ct., May 29,

2001).

After the conclusion of the Franklin Superior Court enforcement action, in July of 2001 the Zoning Administrator issued a new notice of violation, again stating as the violation "use of this property for six dwelling units," and directing the Hayfords to "cease and discontinue the use of two of the dwelling units," but without specifying discontinuance of the dwelling unit in the rear building. The Hayfords appealed this notice of violation to the DRB, and also applied to the DRB for a variance to use the rear building as a dwelling unit, this time proposing to eliminate one of the five dwelling units in the main building, which would have resulted in a total of five dwelling units for the property, to meet the area-per-dwelling-unit limitation. The DRB denied this variance and upheld the notice of violation; the Hayfords appealed both DRB decisions to Environmental Court in Docket No. 154-9-01 Vtec. Judge Meaker's decision in Appeal of Hayford, Docket No. 154-9-01 Vtec (Vt. Envtl. Ct., Feb. 26, 2003), denied the variance request without reaching the merits of the variance standards, on the basis that a variance had already been denied in 1998 and had become final without appeal. That decision also overturned the notice of violation as to the residential use of the fifth apartment in the main building, based on the 1993 permit authorizing repair of one of those units, but sustained the notice of violation regarding the residential unit in the rear building. No party appealed that decision, and it also became final.

No party argues that the October 2001 amendments of the Land Development Regulations made the property any more or less non-conforming. The Hayfords continued

to rent out the rear building after the February 26, 2003 Environmental Court decision upholding the notice of violation. They transferred the property to Appellants on June 30, 2003. Two enforcement actions for injunctive relief and penalties regarding the residential rental use of the unit in the rear building, Docket Nos. 161-9-03 Vtec and 126-7-04 Vtec, remain pending in this Court on inactive status, until the present appeal is resolved. In its June 1, 2004 decision in Docket Number 161-9-03 Vtec, this Court ruled that the underlying enforcement action was not barred by the statute of limitations, but also noted that the owners were entitled to apply for approval of the as-built conversion of the non-conforming use of the rear building from a day care facility to a residential dwelling unit, under the present non-conforming use provisions of the Regulations in Article 6. City of St. Albans v. Hayford & Benoit & Kane, Docket No. 161-9-03 Vtec (Vt. Envtl. Ct., June 1, 2004). Appellants then filed that application; the DRB's denial of it was appealed to this Court in the present case.

In the present case, Appellants seek approval[11] under Article 6 of the Land Development Regulations for the conversion of the rear building from its former non-conforming daycare use to a residential dwelling unit. The fact that its conversion without approval has been ruled to be a violation does not prohibit Appellants from applying to

---

[11] A copy of the application in the present case has not been provided to the Court in connection with the present motions.

bring it into compliance after the fact.  Appeal of Cowan, 2005 VT 126, ¶10 (Dec. 13, 2005) (mem.) (citing In re Newton Enters., 167 Vt. 459, 462 (1998)).   Because Appellants do not propose to modify the existing parking or landscaping configuration of the property, site plan review is not required under the terms of any of the subsections of §701(B).

Under §602(A), a non-conforming use may be continued indefinitely, but "[s]hall not be moved, enlarged, altered, extended, reconstructed, or restored, including the addition of accessory structures," except as specifically provided in §§602(B), (C) and (D).  Of those, the applicable section is §602(D), which provides that a non-conforming use may be altered or extended "if such alteration or extension does not result in additional dwelling units or the addition of other non-conforming uses."

Thus, the present proposal to approve the rear building as a sixth dwelling unit, in addition to maintaining the main building as five dwelling units, does not qualify for consideration under §602(D), as it would result in one additional dwelling unit, contrary to the requirements of §602(D). To be eligible for consideration of approval of the rear building as a dwelling unit under §602(D), Appellants would have to propose[12] to reduce the number of dwelling units in the main building to four, as the Hayfords attempted to do in their 2001 variance application.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' and the City's motions for summary judgment are both GRANTED in PART and DENIED in PART. The present application is not eligible for consideration under §602(D), as it would result in the addition of a dwelling unit. A telephone conference has been scheduled for December 28, 2005 (see enclosed notice). The parties should be prepared to discuss whether this ruling concludes the present appeal, whether Appellants wish to revise their application to conform with the requirements of §602(D), and what

---

[12] The Court understands that such an application is not before the Court in this case, and that Appellants may prefer not to relinquish any dwelling units in the main building that have been ruled to have been approved. If they do file such an application, the Court would consider waiving the filing fee for a subsequent appeal, due to the convoluted history of the litigation involving this property.

proceedings should be scheduled in the related enforcement cases.

Done at Berlin, Vermont, this 15th day of December, 2005.

_____

Merideth Wright

Environmental Judge