STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Application of Verizon Wireless | } | Docket Nos. 203-11-03 Vtec |
| (installation at St. Mary's Star of the Sea) | } | and 140-7-05 Vtec |
| (Appeals of Curtis, et al.) | } | |
| | } | |

Decision and Order on Motions to Remand

In Docket Number 203-11-03 Vtec, Appellants Linda M. Curtis, Clark W. Curtis, Linda S. Cunningham, James C. Cunningham, Christina Hilliker, Richard Hilliker, Francis Lantagne, Rita Lantagne, Liz Lemieux, Leo Paul Major, Norma Major, Stephanie Rosamilia, Nelson C. Stevens III, Rachel A. Stevens, Thomas Zaffis and Susan Zaffis appealed from a decision of the Planning Commission of the City of Newport granting site plan approval for the installation of wireless telecommunication antennas within the towers of the existing St. Mary's Star of the Sea Catholic Church (the Church) and for the construction of a related equipment building.[1] Appellee-Applicant[2] Vermont RSA Limited Partnership,

---

[1]    The proposal also included reconstruction of an existing Church garage, not at issue with regard to the present motions.

d/b/a/ Verizon Wireless cross-appealed from that decision on the issue of whether site plan approval by the Planning Commission was required at all for the proposed project; the cross-appeal was resolved on summary judgment.

---

[2] The application was filed jointly by the landowner Roman Catholic Diocese of Burlington, through St. Mary's Star of the Sea Catholic Church, and by Verizon Wireless; however, neither the Diocese nor the Church has entered an appearance as a party in either of the above-captioned appeals.

In Docket No. 140-7-05 Vtec, Appellants Linda M. Curtis and Clark W. Curtis appealed from a decision of the Zoning Board of Adjustment (ZBA) upholding a decision of the Zoning Administrator declining to rule that a conditional use permit is also required for the changes to the parking at the Church caused by the new equipment building.[3]

Appellants are represented by Gerald R. Tarrant, Esq.; Appellee-Applicant is represented by Brian Sullivan, Esq.; the City of Newport is represented by William Boyd Davies, Esq. The Court heard the merits of Docket No. 203-11-03 Vtec and took a site visit with the parties. The parties have filed requests for findings and legal memoranda regarding the merits of the site plan approval application as presented at trial; the present decision and order makes findings from the evidence presented at that hearing only as necessary to address the pending motions.

Appellants argue that the proposal calls for an alteration to the Church's existing non-conforming parking, which must be ruled on by the ZBA as a conditional use under §402, and that the Planning Commission should have reviewed the parking using the table provided in §328. Appellants also argue that, in order for the Court to consider parking on the adjacent property in the present appeal, at the very least the Church must enter

_____

[3] The equipment structure is proposed to be built onto the south side of the rectory building. It is 12' x 30' (360 square feet) and therefore exceeds the size of a "shed" as that term is defined in §502 of the Zoning Bylaw. It has walls and a roof, and therefore falls within the definition of the term "building." §502.

into a formal parking agreement with the adjacent convent and school. Appellee-Applicant asks the Court instead to reach the merits of its site plan application in Docket No. 203-11-03 Vtec, arguing that site plan approval of the changed parking arrangements could be granted by the Court without reaching the need for conditional use approval of the changes to the Church's existing parking arrangements caused by the construction of the equipment building.

Saint Mary's Star of the Sea was constructed prior to the institution of zoning in the City of Newport. It is located in the Urban Residential zoning district, on a 93,200 square foot lot,[4] adjacent to a much larger property owned by the Daughters of the Sacred Heart of Charity, on which is located a convent, a school, and a shop building.

The Saint Mary's Star of the Sea property contains two buildings: the Church building and the rectory building. These are either two principal buildings on the lot (in violation of §308), or if the rectory is treated as an accessory building to the Church, it may exceed the twenty-foot height limitation for an accessory building in the Urban Residential zoning district. §205.03. The Church building extends into the east side setback, and extends slightly into the front setback at its northeast corner.

[4] Unless otherwise noted, all locations and measurements are taken from the proposed site plan, with proposed parking spaces, attached as Exhibit 3 to the prefiled direct testimony of John A. Steele. (Steele Exhibit 3)

To determine whether the existing Church property is also non-conforming as to any zoning standards related to parking, we must determine the seating capacity in its "main assembly room" and also determine its "floor area." The maximum seating capacity in the assembly room of the Church is 556 seats, calculated as four people per each six-foot-long pew plus 28 seats in the choir. This calculation is consistent with Father Royer's testimony estimating a 550-person capacity. The square footage of the floor area[5] of the Church has not been provided, but may be estimated (based on a footprint approximately 65' wide by 160' long[6]) as very approximately 10,400 square feet.

---

[5] The term "floor area" is defined in §502 as exclusive of basement floor areas; there is no evidence that the Church building has more than a single floor above a basement level.

[6] Estimated by taking measurements by scale from Steele Exhibit 3 or from the diagram attached to the affidavit of John Steele filed as Attachment C to Appellants' August 8, 2005 Motion to Remand ("Attachment C").

The term "parking space" is defined in §502 of the Zoning Bylaw as being "at least nine feet wide and twenty feet long, not including access driveway, and having direct access to a street or alley." An examination of the site plan parking plan (Steele Exhibit 3), in comparison with the diagram (Attachment C) shows fifty existing parking spaces on the Church property, as follows. Six numbered spaces[7] are located on the westerly side of the rectory, thirty numbered spaces[8] are located behind (to the south of) the rectory, two numbered spaces[9] are located near the southwesterly corner of the Church, and twelve unnumbered spaces are located along the southerly edge of the existing parking area. The two spaces numbered 39 and 40, located on the easterly side of the rectory, appear to be new locations for former spaces 1 and 2, and therefore not to have existed in the existing parking configuration, although perhaps they existed within the rectory garage and are simply not shown on either the site plan or the diagram. In addition, the Church uses an undefined number of parking spaces on the adjacent land of the Daughters of the Sacred Heart of Charity, but without any written or formal agreement between the two entities, and uses some thirty-five on-street parking spaces across Prospect Street from the Church. The testimony provided in prefiled form and at trial by

---

[7] Numbered 1, 2, and 35-38.

[8] Numbered 3 through 32.

[9] Numbered 33 and 34.

witnesses from both parties as to approximately one hundred parking spaces provided in the "Church lot" includes some spaces off the Church's property in these other locations, as shown also on Steele Exhibit 3.

Not all of the spaces shown on Steele Exhibit 3 as existing spaces provided on the Church's property meet the size (9' x 20') requirements of the definition of "parking space," §502, or the requirement that each space have direct access to a street or alley. The thirty parking spaces shown as existing behind the rectory are arranged in a grid with ten rows, each row measuring approximately (by scale as discussed in footnote 6, supra) 55 feet in length and having three cars parked end-to-end. Only the two outside cars in each row have the required direct access to a street or alley (and, arguably, the middle car in the last row, which could theoretically parallel park). Moreover, each parking space is undersized as to length, if three spaces are to be fitted into each row, even without the access issue. Thus, the existing parking to the rear of the rectory shown as thirty spaces should only be counted as providing 21 parking spaces as that term is defined in the Zoning Bylaw, even if the last row were to be lengthened by five feet to provide three full spaces.

Calculating all the existing parking on the Church property in compliance with the Zoning Bylaw's definition of "parking space" shows that the existing parking provides 41 spaces, plus whatever spaces may be provided within the rectory's and Church's existing

garages but not shown on the site plan or the diagram. The parking associated with the proposed site plan for the equipment building will not reduce the number of existing spaces, but it will alter the location and configuration of the parking spaces on the Church property.

Under §328[10] of the Zoning Bylaw, the off-street parking space requirement for a religious institution[11] is one space for every three seats in the "assembly room" or one space for every two hundred square feet of floor area, whichever is greater. Off-street parking is one of the attributes of a project retained for municipal regulation under 24 V.S.A. §4413(a)(3)(2004), with respect to "churches . . ., convents, and parish houses."

Using the maximum capacity of 556 or 550, at one space per three persons as required by §328, the minimum required number of parking spaces attributable to the Church building is 185 or 183, if rounded down. (Even if we were to calculate the

---

[10] This is not a determination that the proposal must comply with §328; rather, it is used to determine whether the Church's existing off-street parking is a nonconformity with the Zoning Bylaw, and therefore whether §402 is applicable.

[11] It is not clear from the table in §328 or the definition of "religious institution" in §502 whether the requirement applies to the Church and rectory taken together, or whether the rectory should be treated as a single-family dwelling unit for which two additional spaces would be required. If two additional spaces are required, it is possible that two spaces are provided within the rectory's garage.

required minimum number of parking spaces based on an average attendance of 310, rather than on capacity as required by the §328 table, 103 parking spaces would be required.) The calculation by capacity is the applicable requirement, as it appears to be greater than the parking calculated by floor area, which would be 52 spaces, using a single-floor estimated footprint of 10,400 square feet.

Whether calculated as 41 spaces (see supra, p.5) or as the 50 spaces shown on Appellee-Applicant's site plan, the present off-street parking spaces provided by the Church are insufficient to comply with the requirements of the regulations; therefore the existing parking is non-conforming and triggers the applicability of §402. Indeed, the fact that the Church property does not comply with other zoning requirements (regulating setbacks, height, or one principal building per lot), would cause that section to be triggered even if the parking provided were adequate under the regulations (for example, if the Church were to cure the existing parking nonconformity by entering into a formal agreement with the Daughters of the Sacred Heart of Charity and having that combined parking approved by the Planning Commission under §§328.03 – 328.05. As the arrangement of buildings and existing parking on the Church property is non-conforming,[12][12] Appellee-Applicant's proposal to alter or move the existing parking spaces

---

[12][12]    See, In re Appeal of Miserocchi, 170 Vt. 320, 323-24 (2000) (non-complying structures are also non-conforming uses under the state statute).

requires conditional use approval of the Zoning Board of Adjustment under §402.01, as well as requiring site plan approval from the Planning Commission.  Nothing in the Zoning Bylaw requires or allows the ZBA to decline to hear such an application simply because an appeal of a related Planning Commission decision is pending in this Court.

Appellee-Applicant is correct that, in conducting its site plan review, the Planning Commission (and hence this Court in this de novo proceeding) is only required by §328.01 to "review the existing and related parking arrangements," and that it may, but is not obligated to, require additional parking.  This requirement of §328.01 is in addition to the requirements of site plan approval to  consider the "adequacy of circulation, parking and loading facilities," §606.03(C), and to "impose appropriate conditions and safeguards with respect to the adequacy of . . . [c]irculation and parking."  §606.02(B).  The Court will apply those standards in addressing the merits of site plan approval in Docket No. 203-11-03 Vtec.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Motion to Remand is GRANTED, concluding Docket No. 140-7-05 Vtec.  In Docket No. 203-11-03 Vtec, it appears to the Court that any decision on the merits of site plan review should be held in abeyance until Appellant-Applicant has filed and the ZBA has acted on an application for conditional use approval of the parking.  In that way, any

revisions of the proposed parking made necessary by the conditional use decision may be incorporated[13] so that any such revisions may properly be before the Court on their merits in a single decision.

---

[13] Either through an agreed amendment to the site plan before the Court, or through an appeal of an amendment to the site plan proposed to the Planning Commission, with an additional limited evidentiary hearing if necessary. V.R.E.C.P. 2(b).

We will hold a brief telephone conference (see enclosed notice) on December 28, 2005, to discuss the sequence of events before the municipal panels and in this Court. If the parties are unavailable on that date they should discuss the scheduling with each other before requesting the Court to reschedule the conference. Time is available for the conference on January 4, 2006, or on January 9, 2006. Appellants' motion for costs is hereby deferred to be considered with the merits of any remaining appeals; in addition, the Court will consider any motions for waiver of any filing fees at such time as any future appeals may be filed.

Done at Berlin, Vermont, this 19th day of December, 2005.

_____

Merideth Wright

Environmental Judge