STATE OF VERMONT
ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| **Appeal of Van Nostrand** | } | **Docket No. 209-11-04 Vtec** |
| | } | **Docket No. 101-5-05 Vtec** |
| | } | |

## Decision on the Merits

Applicants Ronald C. and Elizabeth M. Van Nostrand ("Applicants") appealed two decisions of the Town of Salisbury Development Review Board (DRB). In the first, Docket No. 209-11-04 Vtec, Applicants appealed the DRB's decision to reverse the Salisbury Zoning Administrator's (ZA)[1] approval of their application for a zoning permit to construct a four-bedroom, single-family residence and septic system on their 24± acre parcel. The second appeal, Docket No. 101–5–05 Vtec, was from the DRB's decision to deny Applicants a variance[2] under § 502 of the Salisbury Zoning Regulations ("Regulations"). The two appeals were consolidated by this Court in its Entry Order of June 1, 2005.

On January 13, 2006, this Court issued a decision granting partial summary judgment to Applicants, finding that their 24± acre parcel was a lawful, pre–existing lot, the access for which was previously permitted, but which contains a portion[3] that did not conform with the 50-foot width requirements in the amended zoning regulations. Applicants filed a supplemental motion, requesting that this Court grant them summary judgment as to the remaining issues in Docket No. 209-11-04 Vtec. Appellee Linda C. Nordlund ("Appellee") filed a motion requesting that this Court reconsider the determinations announced in its January 13 Decision, including the determination in Docket No. 209-11-04 Vtec that Applicants' back parcel constitutes a lawful pre-existing lot with a non-conforming right-of-way access and the determination in Docket No. 101-5-05 Vtec that a variance was not necessary for the easement access Applicants alleged they

---

[1] As noted in our January 13, 2006 Decision, the Salisbury Zoning Administrator also serves as the Salisbury Health Officer.

[2] The application at issue in Docket No. 101-5-05 Vtec contained two requests, stated in the alternative: either that the DRB approve the "existing easement" that served Appellant-Applicants' back parcel or grant a variance for the "existing easement," given that it is undisputed that the portion of the easement which is purported to pass over the northwest corner of Appellee's property is not fifty feet wide, as required by Regulations § 502. The DRB denied both requests. This Court announced, in its Decision of January 13, 2006, that a variance was not needed for the back parcel easement and vacated the DRB denial of April 21, 2005.

[3] See Finding 13, below.

enjoy over Appellee's parcel. By our December 11, 2006 Decision, we denied both motions and established that the consolidated cases were ready for trial.

A trial was conducted on March 12, 2007. Based upon the evidence admitted at trial, including that which was put into context by the Court's previous site visit, the Court makes the following Findings of Fact and Conclusions of Law.

## Factual Findings

1. Applicants own two parcels of land on the westerly side of West Shore Road along Lake Dunmore in Salisbury, Vermont: the "Front Parcel" (1.1± acres with frontage on West Shore Road) and the "Back Parcel" (interior parcel of 24± acres with no road frontage).[4]

2. As with many lakes throughout Vermont, Lake Dunmore has attracted development, particularly in the form of subdivisions that created small lots that adjoin the lake and upon which homes—most seasonal, some year-round—have been built.

3. Applicants' predecessors in title once owned the Front Parcel and the Back Parcel separately. When the Back Parcel was originally subdivided off in 1955, resulting in it being landlocked, an easement was reserved by the sellers, a Mrs. and Mr. Farnham, that traveled "over an old logging road which cuts across the northwesterly corner of the lands" now owned by Appellee.

4. Appellee disputed the validity of this easement, its width and the propriety of Applicants' improvements to it in a quiet title action brought in Addison Superior Court. By Decision of September 7, 2006 and Declaratory Judgment Order of December 14, 2006, the Addison Superior Court determined the following: (1) the easement for Applicants' Back Parcel over the northwesterly corner of Appellee's lot remains valid; (2) the easement established in 1955 was not clearly defined, but was best estimated to be eighteen feet wide; and (3) Applicants' recent improvements to this access way, including the installation of an underground pipe for utilities, did not constitute an expansion beyond the scope of the original easement.[5]

---

[4] Appellee asserted in her pre-trial motion that because the Back Parcel can be accessed by way of a common drive over the Front Parcel, we have mischaracterized the Back Parcel as having "no road frontage." Appellee is mistaken on this legal conclusion. While the two separate parcels are now owned by the same individuals, the easement that benefits the Back Parcel has not been extinguished by this common ownership because part of that easement runs over and encumbers Appellee's property.

[5] See Nordlund v. van Nostrand, Docket No. 56-3-06 Ancv, Findings of Fact, Conclusions of Law, and Order at 7-8 (An. Super. Ct., Sept. 7, 2006). The Addison Superior Court Decision of September 7, 2006 and Declaratory Judgment Order of December 14, 2006 are now on appeal to the Vermont Supreme Court.

5.  At some point prior to 2000, the Front and Back Parcels again came under common ownership. The Addison Superior Court also determined that this joint ownership of the lots, while perhaps regarded as a merger, did not cause an extinguishment of the easement that served as access for the Back Parcel, at least to the extent that the access traveled across the easement encumbering Appellee's parcel.[6]

6.  On April 4, 2000, Applicants' predecessors in title received a subdivision permit to re-create the two lots described as the Front Parcel and the Back Parcel.

7.  The 2000 subdivision application and permit did not clearly define the easement access to be used for the back Parcel. However, No one appealed the 2000 subdivision permit. Applicants and their predecessors in title delayed commencement of development of the Back Parcel.

8.  Under the zoning regulations in effect in 2000, a landlocked parcel was required to be served by an easement of no less than twenty feet. The Town of Salisbury Zoning Regulations ("Regulations") were thereafter amended to reflect that a landlocked parcel must benefit from "a permanent easement or right-of-way at least fifty (50) feet in width." Regulations § 502.[7]

9.  On August 19, 2004, Applicants applied for permits to construct a single-family dwelling on the Back Parcel. The Salisbury ZA issued a building permit and a sewage disposal permit (No. 04-49 and No. 04-50).

10. Both of Applicants' Parcels, as well as Appellee's parcel, are located in the Lakeshore (LZ) Zoning District. Regulations § 210. A single-family seasonal or year-round residence is identified as a permitted use in the LZ District. Regulations § 970(B).

11. Applicants' 2004 single-family development proposal for the Back Parcel complies with all other size, setback and use restrictions for the LZ District. Appellee did not dispute this at trial; her concerns regarding Applicants' proposed development for the Back Parcel are based solely on the easement that encumbers her property and Applicants' proposed use of it as an access for the Back Parcel residence.

12. The Back Parcel access Applicants propose to use begins as a shared driveway with their Front Parcel residence; the latter driveway splits off just before the Back Parcel access crosses

---

[6] Nordlund v. van Nostrand, Docket No. 56-3-06 Ancv, Findings of Fact and Conclusions of Law at 5.

[7] The current § 502 of the Regulations states:
> No land development may be permitted on lots which do not have either frontage on a public road, or public waters, or with the approval of the planning commission, access to such a road or waters by a permanent easement or right of way at least fifty (50) feet in width.

Regulations § 502. The only difference in the version of § 502 in effect prior to March 5, 2002, was that the required width of access rights-of-way was twenty feet.

Appellee's northwesterly corner. At this juncture, the Front Parcel driveway rises more steeply and turns to the north, towards the Front Parcel residence. The Back Parcel access continues to rise in elevation, but appears less steep and is a more straight approach than the Front Parcel driveway.

13.     In their 2004 applications, and again before this Court on appeal, Applicants noted that only a small portion of the Back Parcel access crossed over Appellee's land. In fact, as evidenced by the survey map of Appellee's lot admitted at trial as Exhibit 2, the access crosses over Appellee's northwesterly corner only for a distance of 44.66± feet, as measured from the center line of the easement. Applicants represented, and this Court so finds, that the Back Parcel access travels over Applicants' Front Parcel for about 150 feet, or more than three quarters of its total distance. The portion of the Back Parcel access that travels over Applicants' Front Parcel can be expanded to fifty feet in width.

14.     Appellee filed a timely appeal of Applicants' 2004 permits with the DRB. Appellee's sole objection to Applicants' proposed development, both before the DRB and before this Court on appeal, relates to their concerns about the easement encumbering her land and benefiting the Back Parcel.

15.     The DRB held a public hearing on Appellee's appeal. On October 28, 2004, the DRB issued its decision reversing the Salisbury ZA's issuance of permits 04-49 and 04-50.

16.     Applicants timely filed an appeal of the DRB decision with this Court, which is the subject of Docket Number 209-11-04 Vtec.

17.     While that appeal was pending with this Court, Applicants applied to the DRB to either approve the existing right-of-way easement they asserted over the northwest corner of Appellee's adjoining parcel, or grant a variance for such existing easement, given that the easement was not wide enough, at least as it crossed over Appellee's parcel, to comply with Regulations § 502.

18.     After a hearing, the DRB issued a decision denying both Applicants' easement approval and variance requests on April 21, 2005.

19.     Applicants filed a timely appeal of the DRB's April 21, 2005 decision to this Court, which is the subject of Docket Number 101-5-05 Vtec.

20.     In our January 13, 2006 Decision on the motion for summary judgment and motion to reconsider, this Court determined that Applicants' Back Parcel is served by a lawful, pre-existing nonconforming access, the non-conformity being that the portion of the access that encumbers and travels over Appellee's northwesterly corner was not wide enough to conform to the

4

amended Regulations § 502. The Court left for trial the taking of evidence and determination of whether Applicants' proposed development of the Back Parcel would constitute an unlawful expansion of this nonconformity.

21.     This Court also determined that, because of the previous unappealed subdivision permit, which authorized access for the Back Parcel by way of the purported easement, Applicants did not need a variance from Regulations § 502 to proceed with their plans for the Back Parcel.

## Discussion

All of the legal issues raised in Applicants' original Statement of Questions in their permit appeal[8] were addressed in this Court's Decision of January 13, 2006. In sum, this Court determined that the 2000 subdivision permit created a vested right in the owner of the Back Parcel, even though the subsequent amendment to the Salisbury Zoning Regulations required that landlocked parcels be served by permanent easements of at least fifty feet. In so holding, we noted that

> The sole nonconformity in the appeals at issue here is the width of the right-of-way. As such, the nonconformity rests with the nature of the lot, not with a structure on it, nor with a use proposed for it. The fact that a permitted, subdivided parcel of undeveloped land no longer complies with the applicable zoning laws cannot be a basis for denying a permitted use on the property, in the absence of any other claims of noncompliance. Weeks, 167 Vt. at 555 (citing Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 51 (1986)) (lawful pre-existing, noncomplying "parcels retain their development rights even though their area is less than prescribed by the ordinance.")

Appeal of Van Nostrand, Docket Nos. 209-11-04 & 101-5-05 Vtec, slip op. at 8 (Vt. Envtl. Ct., Jan. 13, 2006).

All the evidence admitted at trial, including that which was put into context by the site visit the Court conducted jointly with the parties and the Addison Superior Court Judge hearing the easement challenge, has confirmed the legal foundation upon which we based our January 13, 2006 Decision.

We remain convinced of the importance of this Court respecting its jurisdictional limitations, as noted on page 9 of our January 13, 2006 Decision ("the Environmental Court is not vested with the jurisdiction to determine the parties' respective private property rights to land or easements that benefit or encroach upon their property"). Appellee sought and received a

---

[8] The zoning permit appeal is Docket No. 209-11-04 Vtec. As noted in the January 13, 2006 Decision, Applicants' variance appeal (i.e.: Docket No. 101-5-05 Vtec) was rendered moot by the Court's summary judgment determination in Docket No. 209-11-04 Vtec.

determination from the Court with jurisdiction to decide her challenges to Applicants' easement. While the Addison Superior Court determination that the easement encumbering the northwesterly corner of Appellee's parcel and benefiting Applicants' Back Parcel is valid and has not been exceeded by Applicants' recent improvements is now on appeal to the Vermont Supreme Court, we conclude that Applicants have fulfilled their threshold burden in this land use appeal of showing that they have the legal right to use the access they propose for their Back Parcel.

We continue to view the nonconformity here as a "bulk nonconformity," as established by our Supreme Court in In re Miserocchi, 170 Vt. 320, 328 (2000). In the appeal at bar, the narrowness of the small portion of the Back Parcel access, as it crosses over the northwesterly corner of Appellee's parcel, cannot be regarded as a "use" nonconformity; that portion of the Back Parcel access does not conform with the "bulk" restrictions of the current zoning regulations. However, much like the nonconforming barn in Miserocchi, or the other nonconforming structures in the cases from various jurisdictions cited in Miserocchi, the subject property may be developed for a permitted use, so long as the proposed use does not increase the nonconformity of the pre-existing, permitted access.

This last legal question provides for some mental gymnastics, since the nonconformity to address here is the narrowness of a portion of the Back Parcel access. Applicants suggested at trial that "increasing" this nonconformity would mean "reducing" the width of the access as it traverses Appellee's parcel; they offered undisputed evidence that they do not propose to reduce the width of the access. Appellee expressed legitimate concerns about improvements to and possible expansion of the access that Applicants already completed, including while these appeals and the Addison Superior Court litigation were pending.

Construction of land use improvements while an appeal or quiet title action is pending can cause understandable frustrations. But the legal issue of whether Applicants have exceeded the limits of the easement over Appellee's parcel, first created in 1955, is not an issue within the jurisdiction or responsibility of this Court to decide. We therefore decline to do so, and conclude based upon the evidence admitted at trial that Applicants are entitled to rely upon the easement first established in 1955 to access their Back Parcel and that the single-family development they propose will not increase the nonconformity of that access as it crosses over Appellee's parcel. In fact, with the exception of the portion of the access that crosses Appellee's northwesterly corner, the Back Parcel access can now be fifty feet in width and therefore in compliance with

the current Regulation § 502. Since Applicants' proposed development complies in all other respects with the use, setback and size restrictions for the LZ District, we conclude that their zoning application should be approved.

### Conclusions

For the foregoing reasons, Ronald C. and Elizabeth M. Van Nostrand's application for a zoning permit to construct a four-bedroom, single-family residence and septic system on their 24± acre parcel is hereby **APPROVED**. In so doing, we **REVERSE** and **VACATE** the October 28, 2004 Decision of the Salisbury DRB and do hereby **REINSTATE** Permits 04-49 and 04-50 issued by the Salisbury Zoning Administrator. Any construction time periods or other time limitations based upon such permits shall run anew from the date of this Decision.

This completes the proceedings pending before this Court in both appeals. A Judgment Order accompanies this Decision.

Done at Berlin, Vermont this 18th day of May, 2007.

_____
Thomas S. Durkin, Environmental Judge