## State of Vermont
## Superior Court—Environmental Division

============================================================
# ENTRY REGARDING MOTION
============================================================

**In re Atwood/Hood PRD Perm. Amendment**          **Docket No. 182-12-12 Vtec**

Title: Cross Motions for Summary Judgment (Filing Nos. 1, 2, & 3)

Filed By: Town of Williston, Vermont (5/10/13); Appellants Bryant Hamrell and Igor Arsovski (5/10/13); and Applicants Jeff Atwood, Dana Hood, and Brenda Hood (5/13/13).

Town's Response in Opposition to Appellants' Motion for Summary Judgment filed on 5/24/2013.[1]

Applicants' Response in Opposition to Appellants' Motion for Summary Judgment filed on 5/29/13

Appellants' Response in Opposition to Applicants' Motion for Summary Judgment filed on 6/6/13

Appellants' Response in Opposition to Town's Motion for Summary Judgment filed on 6/6/13

 X  **Granted** as to Appellants' SJ Motion and **Denied** as to Town's and Applicants' Motion.

        At issue in this appeal by Bryant Hamrell and Igor Arsovski ("Appellants") is the decision of the Town of Williston Development Review Board ("DRB") approving proposed amendments to a previously permitted nine-lot subdivision by Applicants Jeff Atwood, Dana Hood, and Brenda Hood ("Applicants"). The Town of Williston ("Town") has amended its zoning regulations since the date that Applicants obtained the original subdivision permit. All parties agree that Applicants acquired vested rights in the original subdivision permit obtained under the previous zoning bylaws. Appellants, however, argue that the changes Applicants propose to their subdivision are so substantial that the revised proposal should be submitted as a new application and subject to the current Williston Unified Development Bylaws ("Bylaws") rather than the land use regulations that were in existence at the time of the first approval. The Town and Applicants argue that the proposed subdivision changes are insignificant and do not affect Applicants' vested right to have the proposed modifications considered under the prior regulations.[2]

## Discussion

        We begin our analysis of the pending motions with the common maxim that summary judgment may only be granted upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). In this appeal, the parties have presented the Court with a stipulated

---

[1] The Town titles its filing "Response to Two Motions for Summary Judgment," but as the Town and Applicants both favor granting the permit for the proposed changes, the focus of the Town's filing is on opposing Appellants' motion.

[2] Citing to two cases involving on-the-record towns, Applicants also argue that this Court should employ a substantial evidence standard of review to the DRB's factual findings. (Applicants' Mot. for Summ. J. at 1-2, filed May 13, 2013.) This is not the correct legal standard in this case because the Town of Williston has not elected to subject its DRB hearings to on-the-record review.

statement of undisputed material facts. We commend the parties on their cooperation in providing the Court with this stipulation, as it has eased our review of the pending motions. Thus, this decision on cross motions for summary judgment concerns the legal question of whether the changes that Applicants propose are so substantial that the revised proposal should be subject to the current Bylaws rather than the land use regulations in effect at the time of the initial subdivision approval. The Bylaws contain the controlling law in this case, as they squarely address the issues at hand. In interpreting zoning ordinances, this Court applies the plain meaning of the relevant provision's text, unless that text is uncertain. In re Miserocchi, 170 Vt. 320, 324 (2000).

Chapter 2 of the Bylaws defines vested rights and explains, "[a]ny substantial change in the approved final plans for a development voids its vested rights," although minor changes may be allowed with the approval of the Zoning Administrator. Bylaws § 2.2.5. For guidance on the topic of proposed changes, the Bylaws provide a section entitled "Changes in Development Plans after a Permit is Approved." Bylaws § 5.6. That section lists, as an example of a small dimensional change that the Zoning Administrator could approve, the "shift[ing] [of] a door, and the sidewalk leading from the parking area to that door, by a few feet in order to accommodate a change in a proposed building's floor plan." Bylaws § 5.6.2.2. In contrast, the Bylaw defines a "substantial change," in pertinent part, as a change that alters any one or more of several factors, including:

- the location, extent, or design of any required improvements, public or private, including, but not limited to, proposed runoff and erosion control measures, utilities, parking areas, driveways, roads, trails, sidewalks, street trees, and landscaped buffers,[3] (Bylaws § 5.6.3.4);

- the approved number of . . . buildings, structures, [or] units (Bylaws § 5.6.3.5); or

- any other architectural or landscape feature that is not "minor work" as defined by [Bylaws §] 4.3.5.

The parties here agree that Applicants propose to amend their permit as follows: (1) leave the existing single family dwelling in its current location rather than moving it westward as the original application indicates; (2) relocate a proposed duplex building from the east side of the site to the west side of the site; (3) move the proposed triplex building from one side of the proposed road to the other, where a duplex building had originally been proposed; (4) add garages for the triplex building;[4] and (5) shift the orientation of a second proposed duplex building. (Stipulated Statement of Undisputed Material Facts at 3, No. 15, filed May 3, 2013.) Applicants' Exhibit B is a site plan that superimposes the proposed changes upon the originally approved site plan, revealing the reconfiguration of buildings on the site as well as the relocation of portions of roadways and pathways. See attachment to Applicants' Resp. in Opp'n to Appellants' Mot. for Summ. J., filed May 29, 2013.

---

[3] This provision makes an exception for minor changes approved under Bylaws § 5.6.2.4, which in turn states that "minor changes in the location and specifications of required improvements may be permitted. They must be referred to and approved by the Department of Public Works before being permitted by the Administrator."

[4] The description that Applicants provided also indicated that their revised plan would eliminate a garage previously proposed to be placed next to the existing single family dwelling. (Stipulated Statement of Undisputed Material Facts at 4, No. 18, filed May 3, 2013.)

We conclude that the changes are substantial, as that term is defined in Bylaws § 5.6.3. The proposed changes alter the number of buildings, structures, or units that will be located on particular lots and alter the location, extent, or design of required improvements such as roads and pathways. The proposed changes also alter the type and placement of multiple buildings in the subdivision in ways that do not come under the "minor work" exception in Bylaws § 4.3.5, which provides exceptions to the types of changes that would otherwise be deemed substantial, such as small accessory structures of less than 120 square feet, additions of less than 1,000 square feet to existing buildings, exterior remodels of existing buildings, or site work affecting less than 1,000 square feet.

Applicants and the Town argue that the changes Applicants propose are insubstantial, pointing out that the overall number of principal buildings and total units remains the same. Similarly, Applicants and the Town provide figures about the net effect of the changes on the overall disturbed area, building footprints, and impervious area within the subdivision as a whole.

While it may be true that some of the proposed amendments could have beneficial effects when considered in the aggregate across the entire area of the subdivision, nothing in the plain language of the Bylaws suggests that the DRB or this Court should look to net effects or otherwise conduct a balancing test when considering the magnitude of proposed changes. To the contrary, several portions of Bylaws § 5.6.3 emphasize that changes may be substantial when they alter not only the extent, but also the location of various features. This language makes practical sense; while the rearrangement of buildings within a subdivision may alter, for example, the total impervious surface area, the changes in the location of the particular impervious surfaces added or eliminated could create localized effects that concern specific interested persons. Indeed, the documents filed in this case include a statement by Appellant Arsovski explaining his concern that the proposed increase of development density near his property and the increase in impervious surface area nearby will exacerbate water drainage problems in his back yard. See Ex. E at 29–30, filed May 3, 2013.

## Conclusion

For the reasons detailed above, we **GRANT** summary judgment to Appellants and **DENY** the same to the Town and to Applicants. Applicants retain the vested rights to build according to their original plan in compliance with the regulations in effect at the time of that application. Additionally, this decision does not preclude Applicants from seeking to amend their original plan in ways that do not amount to substantial changes, as that term is defined in the Bylaws.

_____          _____August 27, 2013_____
        Thomas S. Durkin, Judge                                    Date

========================================================================

Date copies sent: _____                      Clerk's Initials: _____

Copies sent to:

   Paul Gillies, Esq., attorney for the Town of Williston

   Chad Bonanni, Esq., attorney for Appellants Bryant Hamrell and Igor Arsovski

   Randolph L. Amis, Esq., attorney for Applicants Jeff Atwood, Dana Hood, and Brenda Hood