*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-080

SEPTEMBER TERM, 2013

| | |
|---|---|
| In re Leonard & Sayour Permitted Use Zoning Permit | } APPEALED FROM: |
| | } |
| | } Superior Court, |
| | } Environmental Division |
| | } |
| | } |
| | } DOCKET NO. 118-8-12 Vtec |

Trial Judge: Thomas S. Durkin

In the above-entitled cause, the Clerk will enter:

Neighbor appeals an order of the Environmental Division, which upheld a zoning permit that allowed applicants to construct a barn used to store a tractor for maintaining property in the Town of Manchester's Forest and Recreation Zoning District. Neighbor argues that the barn does not fit within the uses allowed in the Forest and Recreation District because it is not an accessory structure to agricultural use. We affirm.

In May 2012, applicants applied for a zoning permit, requesting permission to relocate a historic barn onto their land in the Forest and Recreation Zoning District for the purpose of storing a tractor as "equipment appropriate and necessary for use in maintaining forest and rec land—not for residential scale equipment or storage or use." The Town zoning administrator approved the application, and neighbor appealed that decision to the Town's Development Review Board (DRB). The DRB affirmed the zoning administrator's decision to grant the permit.

Neighbor appealed to the Environmental Division. The question submitted was whether a permit should issue for relocation of a historic barn in the Forest and Recreation Zoning District given the Town of Manchester's zoning requirements. The Town's zoning ordinance includes ten permitted uses in the Forest and Recreation Zoning District. The particular permitted use at issue in this case is as follows: "[a]gricultural uses, including: maple sugaring, pasturage of livestock, crop raising, and building (except dwellings), accessory to and necessary for such agricultural uses." The specific question before the Environmental Division was whether the barn was accessory to an agricultural use. The court conducted a de novo hearing and made a site visit. At the close of the hearing, the court made oral findings on the record. The court concluded that in the context of this case, the applicants' regular haying of their field so that it does not become grown over and unusable for crops, is an agricultural use as defined in the Town's ordinance, and that the barn used to store the tractor was as an accessory to that use. The court accordingly affirmed the DRB's decision. It confirmed its decision in a written judgment. Neighbor timely appealed.

When a party challenges the Environmental Division's interpretation of a town ordinance, this Court applies a limited standard of review and "will overturn the environmental court's construction of a zoning ordinance only if it is clearly erroneous, arbitrary, or capricious." In re Nott, 174 Vt. 552, 553 (2002) (mem.). In construing the language of a zoning ordinance, we use the same rules of construction as for a statute, applying the plain and ordinary meaning of words and giving effect to every part of the ordinance. Id. To the extent there is ambiguity in a land use regulation it is construed in favor of the landowner because the regulation is in derogation of common law property rights. In re Miserocchi, 170 Vt. 320, 324 (2000).

Likewise, we defer to the Environmental Division's factual findings, and will not disturb those findings unless "viewing the evidence most favorably to the prevailing party, the findings are clearly erroneous." In re Hamm Mine Act 250 Jurisdiction, 2009 VT 88, ¶ 9, 186 Vt. 590 (mem.). The findings will not be disturbed "as long as there is some credible evidence to support a finding . . . even if it is contradicted by substantial evidence." Id. (quotation omitted).

On appeal, neighbor essentially argues that the environmental court's finding that applicant's use of the property was agricultural was clearly erroneous. In particular, neighbor argues that, at most, the evidence shows that applicants occasionally mowed their open land and left the cuttings to deteriorate in the grass. They did not bale the cuttings, sell the hay, cultivate the soil, produce crops, raise livestock, or otherwise engage in or derive income from agricultural activities on the property. In fact, neighbor argues that the growth applicant mowed consisted of wildflowers and brush, not hay. To the extent the Environmental Division's conclusion that the tractor was used for agricultural purposes, and that the barn was accordingly a permitted accessory structure, was based on a finding that applicant hayed the field, neighbor argues that this essential finding was unsupported by the evidence.

Neighbor also argues that the environmental court applied the wrong legal standard in determining the agricultural nature of applicant's use. This legal argument largely overlaps with the evidentiary argument, since it rests on the premise that the environmental court concluded that simply mowing an open field constitutes "haying" and is therefore an agricultural use. As set forth more fully below, this argument rests on an overly narrow understanding of the environmental court's findings and conclusions.

We conclude that the environmental court's findings of fact are supported by substantial evidence, that its understanding of the law was correct, and that it did not abuse its discretion in applying the facts to the law. Although much of the briefing in this case revolves around the definition of "haying," we need not actually define that term; the term "haying" is not used in the Town ordinance, and its definition is not determinative of the issue before us. The questions before us are: (1) whether the environmental court's findings concerning applicant's use of the tractor on the property are supported by the evidence; (2) whether the environmental court abused its discretion in concluding that applicants' use of the tractor amounted to an "agricultural" use under the Town ordinance; and (3) whether the environmental court's conclusion that the barn is an accessory building to that agricultural use is supported by the evidence and within the court's discretion. We consider each in turn.

First, we consider the environmental court's factfinding. The court asserted that agricultural use includes regularly haying "so that [the] field doesn't get grown up such that it can no longer be used for an agricultural purpose, whatever that purpose may be." Applying this

2

definition, the environmental court found that the haying of the fields on the subject property was an agricultural use. The court did not conclude that the mere act of mowing the field was an agricultural use in and of itself but, rather, considered the purpose of the mowing—maintaining the field's usability for agricultural purposes. The court's understanding that applicants regularly mowed the field was unquestionably supported by testimony that they had the field cut three times in 2012. Its implicit finding that they did so for the purpose of preserving the agricultural usability of the property was likewise supported by testimony that applicants had finished their home within the past year and a half and were considering other activities on the property. In particular, applicants presented testimony that they were contemplating fruit trees and crops—possibly corn—on the property, were considering maple sugaring on the property, and that they had sent soil samples to the University of Vermont for testing to determine the soil value and what crops could be grown on the property. Given this evidence, the environmental court's finding that applicants were mowing the field to maintain its usability for agricultural purposes was not clearly erroneous.

Given the court's understanding of applicants' activities, its conclusion that their efforts to keep the field cut so that the land would be usable for agricultural purposes was not an abuse of discretion. The ordinance includes a nonexclusive list of activities that are permitted agricultural uses, including maple sugaring, pasturing and crop raising. Although applicants had not yet determined which of these uses they intended to pursue, given the environmental court's findings that they were keeping the field cut to facilitate future agricultural use, coupled with testimony that applicants were evaluating which crops could grow in the field, the court did not abuse its discretion in concluding that applicants' regular mowing of the field was, on the record of this case, an agricultural activity. Neighbor's argument that the list of permitted agricultural activities in the ordinance is exclusive is not consistent with the ordinance's language, which prefaces those uses with "including." The word "including" indicates that what follows is a nonexclusive list of examples of agricultural uses. Moreover, neighbor's argument ignores the environmental court's understanding that the field-cutting in this case was for the purpose of facilitating future agricultural activity such as the growing of crops.* We need not determine given the findings in this case whether mowing a field in and of itself constitutes an agricultural use under the ordinance; in this case the environmental court tied the mowing to applicant's goal of preserving the field for planned agricultural use, and we uphold its decision on that basis.

Finally, the environmental court's conclusion that the barn was an accessory structure to the agricultural use—maintaining the land in a state that could support agricultural activities—is supported by the evidence as well as common sense. As the court explained, "[W]hen you get a

_____

* The Town ordinance includes a definition section which reads:

> **Agricultural Use**: The term "agricultural purpose" shall mean agriculture, farming, dairying, pasturage, and animal and poultry husbandry. The term shall not include the slaughtering of animals or poultry for commercial purposes except such as are grown or raised on the premises, nor shall it include the raising and keeping of animals or poultry for commercial purposes on lots less than 5 acres.

Although the Environmental Division did not expressly rely on this definition, its conclusion is consistent with the definition.

tractor to do that work you should have a place to store it, and if you don't have the place to store it, your tractor is not going to be around for very long."

Neighbor points to definitions of "agricultural land," 32 V.S.A. § 3752(1), and "farming," 10 V.S.A. § 6001(22), in the Vermont Statutes and argues that the Environmental Division should have looked to these definitions as guidance in defining agricultural use in the Town ordinance. To the extent that these definitions in unrelated statutes contemplate the growing of crops as a component of agriculture, the Environmental Division's understanding—that maintaining and preparing the land to that end is also an agricultural activity—is not inconsistent with these other statutes.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice

4